Note.—See under (1) 19 C. J. p. 253 §588; p. 262 §610; anno. 44 L. R. A. (N. S.) 1009; 1 R. C. L. p. 929; 1 R. C. L. Supp. 283; 4 R. C. L. Supp. . 62. (2) C. J. p. 330 §768. (3) 19 C. J. p. 238 §558; anno. 24 L. R. R. 629; 13 L. R. A. (N. S.) 244; L. R. A. 1915C, 467; 13 R. C. L. pp. 1210-1212; 3 R. C. L. Supp: 132; 4 R. C. L. Supp. 854.

---

## BALE v. WRIGHT et al.

No. 16409—Opinion Filed May 18, 1926.

Withdrawn, Corrected, Refiled and Rehearing Denied Nov. 9, 1926.

**1. Mortgages—Payment to Mortgagee not Binding on Assignee in Possession of Notes.**

The payment of a negotiable promissory note before maturity by the mortgagor or his grantee, when made to the mortgagee not in possession of the note and mortgage, is not binding upon an assignee thereof who has possession of the note and mortgage at the time of payment unless he has expressly or impliedly authorized such payment.

**2. Bills and Notes—Payment to Other than Holder at Risk of Payer.**

Payment of a negotiable note before maturity to any one other than the holder thereof, or his duly authorized agent to receive such payment, is at the risk of the payer.

**3. Principal and Agent—Proof of Agency—Insufficiency.**

Proof that one purported to act as the agent of another is not sufficient evidence upon which to submit the question of agency to the jury.

**4. Mortgages—Assignment—Record Notice.**

The assignment of a mortgage in due form recorded in the office of the county clerk of the proper county is constructive notice to the mortgagor and his grantees that the assignee named in the recorded assignment is the holder and owner of the mortgage.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Wagoner County; O. H. Searcy, Judge.

Action by Joseph J. Bale against William A. Wright, C. F. Repschlaeger, and H. Letterman. Judgment for defendants, and plaintiff appeals. Reversed.

John C. Graves, E. C. Stanard, and M. L. Hankins, for plaintiff in error.

J. S. Severson and O. C. Essman, for defendants in error.

◆ Opinion by RAY, C. This is a suit by Joseph J. Bale against William A. Wright, C. F. Repschlaeger, and H. Letterman, to recover on a promissory note in the sum of

$3,000 executed by William A. Wright to the Conservative Loan Company of Shawnee, and to foreclose a mortgage on certain real estate in Wagoner county given to secure payment of the note. The note was paid to the Conservative Loan Company, or its successor, the Conservative Loan & Trust Company, of Shawnee, prior to maturity. At the time this suit was commenced the loan company was in the hands of a receiver. The plaintiff had never received the money, and had no knowledge that payment had been made to the loan company until after the maturity of the note. The verdict was for the defendant. The court adopted the verdict, entered judgment against the plaintiff, and a decree canceling the note, mortgage and assignment as clouds upon the title, quieting title in the defendant Repschlaeger, and enjoining plaintiff from claiming any interest in the land.

The only question involved is that of agency of the loan company to collect the principal and interest. There was no conflict of evidence. June 22, 1918, William A. Wright, a single man, executed his negotiable promissory note in the sum of $3,000 due July 1, 1923, to the Conservative Loan Company, a corporation, of Shawnee, with coupon notes attached, and his mortgage on certain land in Wagoner county to secure payment. At the same time defendant William A. Wright executed and delivered to the Conservative Loan Company an instrument denominated "Loan Contract," by which he appointed the Conservative Loan Company as his agent to negotiate for him either in its own name, or in that of any one by it chosen, a loan of $3,000 for five years at 6 per cent. per annum, payable annually on July 1st of each year, to be secured by first mortgage on the land described, with the principal payable wherever the lender might designate, and agreed to pay Conservative Loan Company $300 as compensation for services rendered, and to be rendered in negotiating the loan, inspecting the security offered and advising him relative to his title to the land, preparing the necessary instruments to cure defects in title, preparing all papers necessary to be executed by him to obtain the loan, notifying him, or the future owner of the land, when the interest and principal of the loan should mature, collecting the interest and principal on the loan at maturity from any one to whom he might sell the security, etc. It contained the following clause:

"The agency herein created, and all authority conferred hereby, shall be and remain irrevocable, until said loan is fully paid; and in procuring such loan, in collecting, receiving, and forwarding interest and principal to the holder thereof, you are acting as my agent solely."

The note and mortgage were sold to the plaintiff, a resident of Wisconsin, through the law firm of Sheean & Sheean of Galena, Ill. The note, mortgage, assignment of the mortgage from Conservative Loan Company to Joseph J. Bale, loan contract, or application for loan, and abstract of title, were received by Sheean & Sheean for plaintiff July 29, 1918. The note bore the following indorsement:

"For value received the within note with coupons attached is hereby assigned to Jos. J. Bale, without recourse.
    "Conservative Loan Company.
    "By G. M. Christner, President,
"Attest: C. S. Brown Secretary.
" (Corp. Seal.)"

The assignment of the mortgage from Conservative Loan Company to Jos. J. Bale in due form, was filed for record in the office of the county clerk of Wagoner county, Okla., August 2, 1918, and recorded in record 138, page 309.

July 14, 1920, the defendant Letterman bought the land from Wright and agreed to pay the mortgage indebtedness and had Wright convey by warranty deed to his, Letterman's son-in-law, Repschlaeger, who also assumed the mortgage indebtedness. Wright made the interest payments due prior to the sale of the land by transmitting to the Conservative Loan Company who transmitted to Sheean & Sheean for the plaintiff. All interest payments up to and including the payment due July 1, 1922, were received by Sheean & Sheean for the plaintiff from the Conservative Loan Company. The note and mortgage were at all times until after the maturity of the note in possession of Sheean & Sheean. Neither plaintiff nor Sheean & Sheean had any knowledge of any payments of the principal having been made to the Conservative Loan Company until after the maturity of the note. The plaintiff had no actual knowledge of the sale of the land by Wright, and the defendants had no actual knowledge that plaintiff was the holder and owner of the note and mortgage. The interest payments were made by Letterman to the Conservative Loan Company, who appears to have transmitted to the plaintiff with the exception of the last two payments. Letterman made two payments of $1,000 each on the principal to the Conservative

Loan Company, who executed its receipts therefor.

May 22, 1923, being something more than a month prior to the maturity of the note, Conservative Loan Company wrote Letterman, calling his attention to the fact that $2,000 had been paid on the principal, leaving a balance of $1,000 due, and asked him whether he desired to pay it or whether he desired a renewal, and stated they would be glad to renew the loan or make an increased loan. It asked to be advised in regard to the matter so that it could notify its investor of his intentions. Pursuant to that letter Letterman forwarded to Conservative Loan & Trust Company, successors to Conservative Loan Company, through the First National Bank of Broken Arrow, the final payment of principal and interest, and June 28, 1923, three days before the maturity of the note, the loan company acknowledged receipt of payments in full, and notified him that it would get all canceled papers and release to him as soon as received from the investor.

E. G. Eby, who had been engaged in the real estate and loan business in Wagoner county about 25 years, testified:

"Q. Mr. Eby, I will ask you to state whether or not you know the universal custom in Oklahoma, especially in Wagoner county, in regard to the prepayment of principal and interest due on farm loans? A. I do. Q. Is there such a custom in regard to receiving payments? A. Yes, sir. Q. That is established? A. Yes, sir. Q. What is that custom? A. Custom to pay interest and principal through the company negotiating the loan. The Court: To what extent does that prevail? A. Universally."

The testimony of another real estate and loan man at Wagoner was to the same effect.

The receiver of the loan company testified that the books of the company showed that Frank T. Sheean of Galena, Ill., acted as broker, and that the Wright loan was sold to him, and also showed several other transactions with Sheean as broker.

The defendants' motions for a directed verdict for judgment, notwithstanding the verdict, and for a new trial, were each overruled.

It is apparent from the facts stated, which are not disputed, that the loan company was not in fact the agent of the plaintiff, Bale, for the collection of either the principal or interest.

The general rule is as stated by Chief Justice Nicholson in Chase v. Commerce Trust Co., 101 Okla. 182, 224 Pac. 148, that payment of a negotiable note, secured by a mortgage by the mortgagor or his grantee, when made to the mortgagee not in possession of the note and mortgage, is not binding upon an assignee thereof before maturity who has possession of the papers at the time of the payment, unless he has expressly or impliedly authorized such payment. No contention is made that the plaintiff expressly authorized the loan company to collect either the principal or the interest, but it is contended that Sheean who acted as broker in buying the note and mortgage from the loan company for the plaintiff by reason of having had other transactions with the loan company, must have known of the universal custom testified to by defendants' witnesses, that in such cases the loan company acts as agent for the holder of the note and mortgage in the collection of principal and interest and that such knowledge is imputed to the plaintiff. No authority is cited sustaining that contention and we know of none.

We think the general rule is as stated in Cherokee Grain Co. v. Elk City Flour Mills Co., 78 Okla. 120, 188 Pac. 1067, that parties who contract on a subject-matter concerning which known usages prevail, by implication, incorporate them into their agreement if nothing is said to the contrary. In this case it may be said that the evidence shows that it was the custom in Wagoner county to pay interest and principal through the loan company negotiating the loan, but such custom existing in one county of this state is not such universal custom as will affect the negotiability of a promissory note, otherwise negotiable, in the absence of a showing that the holder had knowledge of the custom.

There is no evidence to show that the plaintiff or Sheean & Sheean ever had any notice or knowledge of the existence of such universal custom in Oklahoma, as testified to by the defendants' witnesses.

We think the contention of the plaintiff, that when the defendants paid the note before maturity such payment was at their risk, must be sustained.

"Payment of a negotiable note before maturity to anyone other than the holder thereof, or his duly authorized agent to receive such payment, is at the risk of the payer." Chase v. Commerce Trust Co., supra.

It is contended, however, that the mortgage

contained a provision authorizing the payment of the note before maturity. The clause contained in the mortgage referred to reads as follows:

"This mortgage is given to secure the sum of $3,000 with interest thereon at the rate of six per cent. per annum from date hereof, payable annually according to the terms and at the time and in the manner provided by one certain promissory note of even date herewith, with coupons for such interest thereto attached, and payable to the order of the mortgage herein, on the dates therein specified (or in partial payments prior to maturity in accordance with stipulations therein), signed by first party." '

The contention is that the clause enclosed in the parentheses, "or in partial payments prior to maturity in accordance with stipulations therein," authorized payment of the note before maturity. We are unable to place such construction upon this language. It specially provides for payment on the dates specified in the note. The clause enclosed in the parentheses, "or in partial payments prior to maturity in accordance with stipulations therein," plainly refers to stipulations in the note. This appears to be a general form mortgage to be made applicable to a note providing for partial payments prior to maturity if given as security for a note containing such provision. The note in this case did not provide for partial payments prior to maturity. It was a five-year note due July 1, 1923. The language does not purport to fix the time of payment otherwise than as specified in the note.

The fact that the loan company purported to act as agent for the owner and holder of the note by accepting payment, issuing its receipts, and inquiring of the defendants to know whether they desired to make the last payment of $1,000, or to make a renewal note, was not sufficient to prove agency in the absence of other evidence tending to show that the plaintiff had expressly or impliedly authorized it to do so. The general rule is that proof that one purported to act as agent of another is not sufficient evidence upon which to submit the question of agency to the jury. Okla. Automobile Co. v. Benner, 76 Okla. 261, 174 Pac. 567; Chickasha Cotton Oil Co. v. Lamb & Tyner, 28 Okla. 275, 114 Pac. 36.

There was no sufficient evidence upon which to submit the question of agency to the jury. Plaintiff was the holder and owner of the negotiable promissory note acquired in due course before maturity. There was no evidence tending to show that he

had ever expressly or impliedly authorized the loan company to act as his agent for the collection of either principal or interest. The assignment of the mortgage in due form was recorded in the office of the county clerk of the proper county, and was constructive notice to the defendants that the plaintiff was the holder and owner of the mortgage. There was no provision in the mortgage authorizing the paying of the note before maturity. The evidence does not show that the plaintiff, or Sheean, the broker, who bought the note for him, had any knowledge of the universal custom in Oklahoma that the loan company making a loan acts as agent for the holder of the note and mortgage in collecting the principal and interest. The only reasonable inference to be drawn from the evidence of the defendants is that they had sufficient confidence in the loan company to make the payments, believing they would receive the proper credits. The payments made, in the circumstances shown to have existed in this case, were made at the risk of the defendants.

No legal defense having been tendered by the defendants to the payment of the note, the judgment is reversed, with directions to the trial court to vacate, set aside the judgment and decree rendered, and enter judgment for the plaintiff against the defendants, and for the foreclosure of the mortgage.

By the Court: It is so ordered.

Note.—See under (1) 27 Cyc. p. 1315; anno. 29 L. R. A. (N. S.) 577; 41 L. R. A. (N. S.) 462; 19 R. C. L. p. 358. (2) 8 C. J. p. 593 §828. (3) 2 C. J. p. 961 §731; 21 R. C. L. p. 822; 3 R. C. L. Supp. p. 1192; 4 R. C. L. Supp. p. 1432. (4) 27 Cyc. p. 1317.