## WINNEBAGO STATE BANK v. HALL et al.

No. 17622.  Opinion Filed Oct. 25, 1927.

(Syllabus.)

**1. Principal and Agent—Agency not Provable by Declarations and Acts of Reputed Agent Alone.**

Evidence of statements, declarations, and acts of the reputed agent, standing alone, are not admissible in evidence to establish the relation of principal and agent.

**2. Same—Plaintiff Entitled to Instructed Verdict Where Sole Defense of Agency Unsupported by Competent Evidence.**

Where, in the trial of the cause, plaintiff makes out a prima facie case, and the only defense thereto depends upon the existence of a relation of principal and agent, and there is no competent evidence tending to prove such relation, it is error for the trial court to refuse to instruct the jury to return a verdict for plaintiff when properly requested so to do.

**3. Bills and Notes—Payment Before Maturity to Other than Holder at Risk of Payer.**

Payment of a negotiable promissory note, or a part thereof, before maturity, to one other than the holder thereof, or his duly authorized agent to receive the same, is at the risk of the payer.

**4. Same—Assignment of Note—Notice to Maker not Required.**

Where a negotiable promissory note has been assigned, the holder of such note is not required to notify the maker that said note has been assigned.

**5. Corporations—Unnecessary to Allege Incorporation Where Suit in Corporate Name.**

Where a plaintiff sues in its corporate name, it is not necessary to allege in the petition that the plaintiff is a corporation,

and such a petition is good against a demurrer.

**6. Mortgages—Foreclosure Action — Sufficiency of Evidence.**

Evidence examined, and held, to have made out a prima facie case, and sufficient to support a verdict.

**7. Same—Assignee of Mortgagee not Prejudiced by Illegal Contract Stipulation Between Borrower and Loan Agent for Payment of Mortgage Tax Fee by Borrower.**

Where one desiring to secure a loan executes a contract with a loan company whereby the loan company is appointed agent to secure such loan, and said borrower, among other things, agrees to pay the mortgage tax fee, if the loan is secured, which is required of the mortgagee by section 9588, C. O. S. 1921, and the loan company makes said loan, and the borrower executes a note and mortgage on the same date without reference to said mortgage tax fee, and the assignee of said note and mortgage files suit thereon alleging that said mortgage tax was paid as required by law, in the absence of any proof to the contrary, other than the execution of said loan contract, the parties to said note and mortgage will be presumed to have contracted within the law, and they and their assigns are bound by the terms thereof.

Commissioners' Opinion, Division No. 2.

Error from District Court, Rogers County: Wayne W. Bayless, Judge.

Action by the Winnebago State Bank against William F. Hall, H. B. Pearson, et al., upon a note and for foreclosure of a mortgage. Judgment for defendants, and plaintiff appeals. Reversed, with instructions.

E. C. Stanard, M. L. Hankins, and Edward Jordan, for plaintiff in error.

Hall & Battenfield, for defendants in error.

JEFFREY, C. This action was commenced by the Winnebago State Bank of Winnebago. Ill., herein called plaintiff, against William F. Hall H. B. Pearson, Elizabeth R. Pearson, his wife, and the Texas Company, defendants, on November 5, 1923, in the district court of Rogers county, for a judgment decreeing the amount due on a promissory note, and for foreclosure of a real estate mortgage given to secure said note, and covering the following described land, to wit:

The W.½ of the N. E.¼ of the N. W.¼ and the N. W.¼ of the S. E.¼ of the N. W. ¼ of section 5, township 22 north, range

15 east of the Indian Base and Meridian, and other lands."

On March 15, 1917, William F. Hall and Amanda Hall secured a loan from the Conservative Loan Company of Shawnee, Okla., in the amount of $4,500, and at the same time gave a promissory note for that amount due ten years from date, bearing interest at six per cent. payable semiannually, and providing that if default be made in the payment of any installment of either principal or interest, when the same became due, that all of the principal and interest at the option of the holder of the note should become due and payable without notice. The note also referred to a real estate mortgage given to secure the note, and provided further for the payment of $100, or any multiple thereof, at any interest-paying date after two years from the date thereof, by giving 60 days' written notice. This note was secured by a real estate mortgage, of the same date, covering the above-described land. On December 5, 1917, plaintiff became the owner and holder of the note and mortgage. The note was indorsed in blank by the Conservative Loan Company, and delivered to plaintiff by one W. W. Bennett of Rockford, Ill., and the mortgage was regularly assigned to plaintiff and placed of record in Rogers county, Okla., where the land is situated. At the time the loan was secured, William F. Hall and Amanda Hall executed a loan contract appointing the Conservative Loan Company, as agent of the Halls, to secure a loan in the sum of $4,500 for ten years, either in the name of the Conservative Loan Company, or any one else selected by it, and agreed to pay said loan company the sum of $900 as compensation to secure said loan, inspect the security, advise about title, cure defects in title, prepare all papers incident to the loan, to notify the Halls or the future owner of said land when the interest and principal of said loan became due, to collect the interest and principal from any one to whom the land may be sold, to look after the taxes, and to guarantee to the purchaser of said mortgage the truthfulness of all statements contained in the application for said loan. On May 26, 1919, William F. Hall and Amanda B. Hall conveyed said land to H. B. Pearson, and Pearson assumed and agreed to pay the indebtedness against said land. Pearson did make the interest payments as they came due, and on September 1, 1919, Pearson paid $900 on the principal of said loan, and on September 1, 1920, he paid $1,000 more on the principal to the Conservative Loan Company of Shawnee, which sums were retained by the loan company and never paid to plaintiff.

After the payment of the $1,000, Pearson was advised by the loan company that his interest payments would be $78 instead of $135, as provided by the note, which he paid until September 1, 1923. However, it appears that while Pearson only paid $78 to the Conservative Loan Company, as the semiannual interest payment after he had made the principal payment, the loan company would remit the sum of $135, the original amount of the interest coupon, to W. W. Bennett & Company, and W. W. Bennett & Company would forward that amount to plaintiff. When the interest payments were received by plaintiff, it would detach the interest coupon, forward it to W. W. Bennett & Company, and that company would forward the coupon to the Conservative Loan Company. The Conservative Loan Company would then stamp the interest coupon "Paid," and forward same to Pearson. During the latter part of 1920, the Conservative Loan Company was reorganized under the name of the Conservative Loan & Trust Company, and in 1923, the Conservative Loan & Trust Company failed, and a receiver was appointed to conduct the business of the company. When the interest payment became due September 1, 1923, the defendant Pearson tendered the sum of $78 to the receivers of the Conservative Loan & Trust Company, as he had done on several occasions, and was advised that plaintiff, who had purchased the note and mortgage, would not accept this amount, but insisted that $135 was the amount of the interest due. Defendant refused to pay more than $78, and plaintiff commenced this suit. The case was tried to a jury, and a verdict rendered in favor of defendants H. B. Pearson and Elizabeth R. Pearson, his wife, upon which judgment was duly rendered and plaintiff appeals. The only issues tried were those between plaintiff and the defendants Pearson, and they are the only parties interested in this appeal.

Plaintiff assigns numerous errors as grounds for reversal of the judgment of the lower court, but briefs them under five propositions. In view of the conclusions we have reached, it will only be necessary to consider the first and third propositions, which may be discussed together, to the effect that the court erred in permitting defendants to introduce incompetent and irrelevant testimony over the objection of plaintiff, and in failing to render judgment for plaintiff when requested so to do.

The defendants contended that the Conservative Loan Company and the Conservative Loan & Trust Company were the agents

of plaintiff, and that defendants had paid $1,900 on the principal sum of the note, and had paid or tendered payment of all interest as the same came due, and that by reason thereof plaintiff's suit was prematurely brought. Plaintiff denied that either of the loan companies was its agent, and contended that it had no dealings or transactions whatever with the Conservative Loan Company or the Conservative Loan & Trust Company; that it purchased the note and mortgage from W. W. Bennett, and that when the interest payments came due, it received a check for $135 from W. W. Bennett & Company, and it returned the interest coupons to the said W. W. Bennett & Company. The court admitted in evidence, over the objection of the plaintiff, all of the paid interest coupons bearing the "paid" stamp of the Conservative Loan Company, also the commission notes, which had been paid and canceled, and letters from the Conservative Loan & Trust Company to defendants, acknowledging receipt of interest payments, and also concerning insurance on the improvements on said land. Plaintiff contended that this evidence was inadmissible to establish agency, and there being no other evidence which tended to establish the relation of principal and agent, this character of evidence was wholly inadmissible. With this contention we are inclined to agree. This case comes clearly within the rule followed in McDonald v. Strawn, 78 Okla. 271, [190 Pac. 558; Stapleton Motor Sales v. Coley, 107 Okla. 269. 232 Pac. 28; Oklahoma Automobile Co. v. Benner, 70 Okla. 261. 174 Pac. 567; Chickasha Cotton Oil Co. v. Lamb & Tyner. 28 Okla. 275, 114 Pac. 333. to the effect that evidence of statements. declarations and admissions of the reputed agent are not admissible in evidence to establish the relation of principal and agent. The rule is extended still further by these cases, to the effect that proof that one purported to act as agent of another is not sufficient evidence upon which to submit the question of agency to the jury. See. a'so, Bale v. Wright et al., 120 Okla. 174, 252 Pac. 56. General reputation of one as agent of another does not establish authority of reputed agent to represent his principal. McDonald v. Strawn, supra. There is no competent evidence in the record tending to establish the fact that the Conservative Loan Company, or the Conservative Loan & Trust Company, was the agent of plaintiff, and clearly under this situation any statement, act or declaration of the loan companies could not be admissible against plaintiff. On the contrary, the evidence of the plaintiff is

that it did not know either the Conservative Loan Company or the Conservative Loan & Trust Company; that it did not authorize these companies to represent it in connection with this loan, and had no communications or dealings with these companies whatever.

If neither of the loan companies was the agent of plaintiff, either by appointment or ratification, or if plaintiff's conduct was not such as would estop it from declaring the whole of the debt due under the terms of the note and mortgage, then the defendants have no defense to the suit to foreclose the real estate mortgage, for the reason that they had defaulted in making the interest payments after they became due.

There is no competent evidence tending to show that either of the loan companies was agent of plaintiff in this transaction, and no act on the part of plaintiff indicating that it ratified the purported acts of the loan companies.

It was held in Bale v. Wright et al., 120 Okla. 174, 252 Pac. 56, in which case the facts were very similar to the case at bar, that payment of a negotiable note before maturity, to one other than the holder thereof, or his duly authorized agent to receive same, is at the risk of the payer. To the same effect is Chase v. Commerce Trust Co., 101 Okla. 182, 224 Pac. 148; First National Bank v. Ross, 66 Okla. 68, 167 Pac. 211; Smith v. First National Bank, 23 Okla. 411, 104 Pac. 1080; Weyl v. Smith, 122 Okla. 216, 253 Pac. 982. It is true that the defendant had a right to make payments on the principal in the manner in which he did, if the holder of the note or his agent would accept same, without giving written notice as provided by the note, and in that sense it may be said that these payments were not made before maturity. However, payments may be made on any negotiable note before maturity without a provision for such payment if the holder will accept same. It was stated in the above cases that it was the duty of a person making payment under such circumstances to demand possession of the note. It is just as much the duty of one making payment, under circumstances as in the case at bar, to see that the note on which payments are made is properly credited. It cannot be said with any merit that plaintiff is estopped to declare the full amount of the note due, as provided therein, by reason of its conduct. for the reason that the plaintiff. in so far as the record discloses, knew nothing of the transactions between defendants and the loan companies.

Under the state of the record, as above indicated, it was prejudicial error to admit the evidence complained of, and also error to overrule plaintiff's motion for a directed verdict, and its motion for judgment, notwithstanding the verdict of the jury.

Our attention is called to the following cases as authority for the admission of the evidence complained of: Walker v. Beveridge et al., 107 Okla. 147, 231 Pac. 217; Schoonover v. Beveridge et al., 108 Okla. 114, 233 Pac. 728; Dandois v. Raines et al., 115 Okla. 88, 241 Pac. 1099. Those cases are not applicable to the facts in this case, for the reason that the letters, telegrams, and documents admitted in evidence passed between the alleged agent and his principal.

Neither are the cases of Tate v. Baugh et al., 125 Okla. 166, 256 Pac. 890, and Illinois Bankers' Life Ass'n v. Grayson, 125 Okla. 81, 256 Pac. 894, controlling of this case. In the first case, the evidence disclosed that the loan company, which was alleged to be the agent of plaintiff, forwarded to plaintiff a guaranty which provided that the loan company would attend to the collection of principal and interest, free of charge, and remit therefor as soon as collected. In the latter case, the evidence disclosed that a verbal agreement had been entered into between the president of the Bankers' Life Association and the loan company, whereby the loan company would represent the plaintiff in the collection of interest and principal on all loans acquired through the loan company.

Defendants insist that they were never notified of the assignment of the note and mortgage; that the assignment of the mortgage, which was of record in Rogers county, only showed the Winnebago State Bank to be the holder, without any identification as to its location or residence. Under the record of the case, the note was a negotiable instrument, and plaintiff was a holder in due course. The law does not impose upon the holder of a promissory note the duty of notifying the maker that the same has been assigned. Chase v. Commerce Trust Co., supra. Defendants' own testimony indicates that they could have ascertained who the holder of their note was, either from the loan companies, to whom they were making payments, or from the mortgage records and their local bank, from which they made inquiry. Defendants' local bank advised them that there was a Winnebago State Bank in Illinois and one in Minnesota. By writing a letter to either of those institutions, defendants should have located the holder of the note. Under the law, it became their business to ascertain this fact before making payment.

Defendants have filed a cross-appeal, not for the purpose of having the verdict and the judgment of the court set aside, but for the purpose of preventing the rendition of judgment in favor of plaintiff and against defendants, in the event the cause is reversed upon plaintiff's appeal. Defendants assign several errors, and brief them under four propositions. Neither defendant nor plaintiff cite any authorities, whatever, as to the merits or demerits of the errors complained of in the cross-appeal. The defendants' first complaint is that the trial court erred in overruling defendants' demurrer to plaintiff's petition, and their objection to the introduction of any evidence upon said petition. The caption of the petition described plaintiff as "The Winnebago State Bank, a Corporation." The body of the petition merely referred to plaintiff without alleging its corporate existence or its legal residence. Defendants demurred to the petition, which was overruled, and also objected to the introduction of any testimony because of the above defect. During the trial the evidence disclosed that plaintiff was the Winnebago State Bank of Winnebago, Ill., and at the close of the evidence plaintiff asked and was granted permission to amend his petition by inserting, "That the Winnebago State Bank is a corporation duly incorporated under the laws of the state of Illinois." Volume 7, R. C. L. at page 697, gives the rule as follows:

"The prevailing view is that in an action by a corporation in its corporate name, it is not necessary to allege in the declaration or complaint that the plaintiff is a corporation, and the same rule applies where a corporation comes in by way of a cross-petition."

In the case of Los Angeles Ry. Co. v. Davies et al., 146 Cal. 179, 79 Pac. 865, where the identical question was raised by demurrer to the petition, the court held that the demurrer was directed to want of capacity to sue, and that before a demurrer could reach the defect, such want of capacity must appear upon the face of the complaint. Otherwise, it would be necessary to raise the objection by answer. The petition in the case at bar does not show upon its face a want of capacity in the plaintiff to sue. Hence, if the defendants desired to challenge plaintiff's capacity to sue it should have been done by answer and not by demurrer.

The next complaint urged by defendants is that the court erred in permitting plaintiff to introduce incompetent, irrelevant and

immaterial evidence upon its petition. The court admitted, over the objection of defendants, the original mortgage, note, loan contract and assignment of mortgage. The mortgage, note, loan contract and assignment of mortgage were identified by witnesses, Armstrong and Branstetter, who were officers of the plaintiff bank, in depositions given by them sometime prior to the trial of the case. The instruments were marked as plaintiff's exhibits 2 to 5, inclusive, and otherwise identified by dates, amounts and recording marks, but were not attached to the original depositions. When the depositions were read, counsel for plaintiff produced these instruments and offered them in evidence. It is objected that they should have been attached to the deposition, and not having been attached, they were not sufficiently identified as the instruments about which witnesses, Armstrong and Branstetter, gave their testimony. The statutes do not require that exhibits be attached to the deposition in order that they may be offered in evidence in connection with the testimony of the witnesses giving the deposition. Indeed, it would be an impracticable rule to require such, for in many instances exhibits to depositions consist of pictures, glass plates and the like. The only requirement, in order that such exhibits be admitted in evidence, is that they be sufficiently identified by the questions and answers in the deposition or by marks on the exhibits, so that when they are offered in evidence the court may by referring to the depositions and the exhibits themselves ascertain that they are the exhibits about which the testimony in the depositions were given. It appears that these exhibits were sufficiently identified, and it was not error to admit them in evidence.

The third proposition urged by defendants goes to the sufficiency of the petition to state a cause of action, and of the sufficiency of the evidence upon the petition to support a judgment in its favor. The only defect pointed out in the petition has been disposed of under the first proposition. Plaintiff's evidence showed that it purchased the note in question; took an assignment of the mortgage; placed the same of record in Rogers county, Okla.; that it never received any payments on the principal of the loan, but received the interest payments until September 1, 1923. When the defendants failed to make the September, 1923, interest payment, it declared the whole of said amount due and later commenced its foreclosure suit. There can be no question but that this evidence made a prima facie case, and would entitle plaintiff to a judgment under the state of the record.

Defendants' fourth proposition is that the court erred in permitting plaintiff to amend his petition, in the manner hereinbefore stated, after the close of the case on behalf of both parties. In view of what we have already said with reference to the objection to the petition, it will not be necessary to pass upon this proposition.

Defendants, by their supplemental brief, raised a new question, which goes to the sufficiency of plaintiff's evidence. Our attention is called for the first time to the loan contract or agency contract executed by the Halls to the Conservative Loan Company as their agent to secure the loan, and agreed, among other things, "to pay the mortgage tax fee" in the event a loan was secured. Section 9588, C. O. S. 1921, provides for the assessment of a mortgage tax fee, and the latter half of said section is as follows:

"The tax herein provided for shall be paid by the mortgagee, and any mortgagee, agent, representative, or person who shall through any scheme, arrangement, agreement, inducement or device by an increase of the rate of interest, commission, brokerage, or otherwise, charge to or exact from the mortgagor the payment of such tax, shall be deemed guilty of a misdemeanor, and upon conviction be punished accordingly."

It is contended that the loan contract, being an agreement to pay the mortgage tax fee on behalf of the Halls, is an illegal contract, and therefore void. It is also contended that this loan contract, being executed for the purpose of securing the loan, and on the same day that the note and mortgage were executed, is a part and parcel of the note and real estate mortgage; and that said note and mortgage are so tainted with illegality as to render them void. It should be borne in mind that neither the note nor mortgage contains any provision with reference to the payment of the mortgage tax fee, and there is no evidence as to who actually paid it. The petition alleges that this tax was paid as provided by law, and no question was raised as to this point during the trial of the case. An attempt to enforce the loan contract containing such a provision would present a much more serious question. But this action is based upon the note and mortgage, no reference in the petition having been made to the loan contract. And it was not necessary in order to properly plead and prove a cause of action based on said note and mortgage to refer to the loan contract. In so far as the record discloses, the mortgage and note were collateral

to, and wholly independent of, any illegal agreement made between the parties. This is one of the tests announced in the case of McBlair v. Gibbes, 17 How. 232, 15 L. Ed. 132. See, also, Walters National Bank v. Bantock, 41 Okla. 153, 137 Pac. 717; Citizens' National Bank of Chickasha v. Mitchell et al., 24 Okla. 488, 103 Pac. 720. The fact that the Halls agreed in advance to pay this fee, in the absence of proof that they contracted by the terms of the mortgage or note to pay the tax, or that they did pay it, would not create a presumption that the mortgage was illegal or unenforceable as against public policy. 6 R. C. L. 694, lays down the following rule:

"The presumption is, however, in favor of the legality of the contract, and if the illegality does not appear on the face of the contract, it must be proved by the person who attacks the validity of the contract."

And again, at page 699, it is said:

"To invalidate a contract for illegality, the illegality must be inherent. It is not enough that it is associated even closely; it must be a part of the contract."

Another well-recognized principle of law, which we think is applicable to this case, is, in construing a contract, if it appears that the contract is susceptible of two constructions, one lawful and the other unlawful, the former will be adopted. The presumption is that the parties contracted within the law. Foreman v. Needles, 78 Okla. 105, 188 Pac. 1087; Martin et al. v. Okla. State Bank, 86 Okla. 113, 206 Pac. 824; Knebel v. Rennie et ux., 87 Okla. 136, 209 Pac. 414.

In view of the foregoing we conclude there is no merit in defendants' cross-appeal, and the judgment of the trial court is reversed, and the cause remanded, with directions to the trial court to render judgment decreeing the amount of the note due and foreclosing plaintiff's mortgage.

BENNETT, HERR, DIFFENDAFFER, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 2 C. J. p. 935, §692; p. 945, §709; anno 17 L. R. A. (N. S.) 219; 21 R. C. L. p. 821. (2) 38 Cyc. p. 1575. (3) 8 C. J. p. 593, §828; p. 603, §840; 3 R. C. L. p. 1287; 1 R. C. L. Supp. p. 1023. (4) 8 C. J. p. 384, §568; p. 598, §835; 2 R. C. L. p. 624. (5) 14a C. J. p. 815. §2928; 7 R. C. L. p. 697; 5 R. C. L. Supp. p. 416; 6 R. C. L. Supp. p. 457. (6) 27 Cyc. p. 1621 (Anno). (7) 27 Cyc. p. 1614.