### KELCH v. BLEVINS et al,

No. 25352. April 21, 1936.

Rehearing Denied May 26, 1936.

Holloway & Holden and Harry Seaton, for plaintiff in error.

Henry L. Burris, J. Howard Langley, and Harve N. Langley, for defendants in error.

PER CURIAM. On the 16th day of June, 1931, Wendell Kelch filed a petition against George Blevins and Mollie Blevins, his wife, and J. B. Burford and Mrs. J. B. Burford, his wife, alleging that George

Blevins and Mollie Blevins executed their real estate mortgage note for $2,500 to the Graves Farm Loan Investment Company dated March 24, 1924. Said note was payable April 1, 1929, bearing interest from date at 6 per cent. per annum. This note had attached thereto interest coupons payable annually providing for interest at the rate of 10 per cent. per annum from maturity. A mortgage to secure the principal and interest coupons covering the property of defendants was executed by Blevins and his wife, and by conveyance ownership of the property was at the time of this suit vested in J. B. Burford and wife. Plaintiff alleges ownership of the mortgage by due assignment. (1) This mortgage was assigned to the Illinois Valley Trust Company May 5, 1924, and plaintiff claims by assignment under date of November 29, 1925. (2) The assignment was acknowledged by witness Ryan February 23, 1931, less than four months before suit. It was never recorded.

All of the coupon notes with the exception of the last one in the sum of $150 were duly paid to the plaintiff, receipt of which is acknowledged, and the controversy arose over the payment of the last coupon note of $150 and the principal sum of $2,500. Judgment is sought for the plaintiff in the sum of $2,650, and $200 attorney fees, for foreclosure of the lien and other relief. The evidence shows that the plaintiff obtained these notes and mortgage from the Illinois Valley Trust Company, and that he received payment through them; that the original note and mortgage was executed to the Graves Farm Loan Investment Company; that company failed and went into the hands of a receiver before it had remitted the amount of the principal note and the last coupon payment. The sole question is whether or not the plaintiff had constituted the Graves Farm Loan Investment Company his agent for the collection of the money. With relation to this question certain testimony was admitted and instruction given of which complaint is made.

Plaintiff admitted in his testimony that the Illinois Valley Trust Company was his agent for the collection of the money. It therefore leaves the only other question in the case to be decided, Was the Graves Farm Loan Investment Company the agent of the Illinois Valley Trust Company, and therefore does it follow that the Graves Farm Loan Investment Company was the agent of the plaintiff so that plaintiff was bound by the receipt of the money in payment of the loan? Notice to take depositions was given by the plaintiff in the case and the president of the Illinois Valley Trust Company and the plain-

tiff testified at the taking of said depositions. The president of the Illinois Valley Trust Company testified in response to the question as to whether he at any time requested the Graves Farm Loan Investment Company to collect interest or principal for him, "No," and explained that the reason the Graves Farm Loan Investment Company was never requested to collect from the defendants was because the payment was always sent by the Graves Farm Loan Investment Company to the Illinois Valley Trust Company prior to maturity. The only inference to be drawn from the testimony is that if these payments had not been sent when due, the Illinois Valley Trust Company would have inquired of the Graves Farm Loan Investment Company why the payments had not been made. This fact seems inescapable.

Plaintiff objected to the introduction of the evidence of a guaranty certificate forwarded by the Graves Farm Loan Investment Company to the Illinois Valley Trust Company and in turn sent to the plaintiff. As to this, plaintiff's witness Ryan, president of the Illinois Valley Trust Company, stated that he would not say that he received the guaranty certificate from the Graves Farm Loan Investment Company, but received one with some loans but never accepted it or executed it, and that it was merely inclosed with the other papers in the loan. Witness admits receiving the papers. That he never accepted it is a self-serving declaration and a legal conclusion. It was for the jury to pronounce by their verdict the effect of the receipt of this certificate. In this connection it will be noted that the plaintiff himself stated that when he purchased the mortgage from the Illinois Valley Trust Company he received this certificate of ownership along with the loan papers purchased, and in direct response to the following question plaintiff stated:

"Mr. Kelch, did you receive an executed assignment of this mortgage from the Illinois Valley Trust Co.? Answer. Yes. The Illinois Valley Trust Company executed and delivered this assignment to you at the time you bought the mortgages in 1924? Yes. Q. Mr. Kelch, in 1924, didn't they give you a certificate of ownership? A. Yes."

Plaintiff complains of the following instruction:

"There has been admitted in evidence in this case a blank form of what is called a guaranty certificate, and it is the contention of the defendants that this form of guaranty was used by the Graves Farm Loan Investment Company, and was sent along with the papers in connection with the note and mortgage involved in this case, and that it was received by the plaintiff along with the note,

mortgage and other papers, at the time he purchased the note. Whether he actually received this paper is a question for you to determine from the evidence in this case; and if he did receive it, what weight and credit you will attach to it, as bearing upon the question as to the Graves Farm Loan Investment Company being the agent of Wendell Kelch, plaintiff, authorized to receive payment on this note and mortgage; and is to be considered along with all the other evidence in the case."

To which exception was duly made. The instruction is on its face harmless in view of the testimony of the plaintiff. The jury was warranted in finding that the plaintiff admitted that he received this certificate. But the court, after instructing that it is a question for them to determine whether he received it, merely instructed them to take this with other testimony to determine the fact of agency. We find no error in this instruction. This is the only instruction of which complaint is made.

With relation to the depositions taken by the plaintiff of his testimony and that of Ryan, president of Illinois Valley Trust Company, which were introduced in evidence by the defendant, plaintiff states that by the introduction of these depositions defendant is bound by every statement of the witnesses P. J. Ryan, president of said company, and the plaintiff, Kelch. No authorities are cited to support this rule, and in fact no authorities are necessary to support the general rule that a party is bound by the testimony of his own witnesses; but these can hardly be said to be his own witnesses. It is true that they are witnesses called by the defendant, but they can hardly be called witnesses for the defendant. At most, they are adverse witnesses. The plaintiff is of course always presumed to be an adverse witness, and considering the fact that the plaintiff himself served the notice to take depositions and plaintiff's counsel questioned both plaintiff and Ryan, the witness Ryan certainly was adverse in the light of the testimony given. Under such circumstances, it was for the jury to determine the relative value of their statements as reasonable men would, influenced by the positions they held and their interest in the case. Witness Ryan testified to a course of dealing with the Graves Farm Loan Investment Company regarding receipt of these payments. He stated as set out above that it was never necessary to call upon the company to forward the payments upon the coupon notes. He further stated that he had purchased numbers of mortgages from the Graves Farm Loan Investment Company, and that it was the general cus-

tom for them to forward the papers to the Illinois Valley Trust Company, which papers usually inclosed a certificate of ownership; that this certificate of ownership would be executed in blank and when the reassignment was made to purchaser the ordinary course of business would be to place the name of purchaser in the blank and forward the certificate of ownership to purchaser. Plaintiff, Kelch, stated that he had dealt exclusively with the Illinois Valley Trust Company; that he bought and paid for this mortgage in the sum of $2,500, and accrued interest; that he received all the money in payment of the first four certificates from the Illinois Valley Trust Company; that he did not know the Graves Farm Loan Investment Company; that he did not request the Graves Farm Loan Investment Company to collect the interest or principal in connection with the loan or request any one else to; that he had an agreement with the Illinois Valley Trust Company at the time he purchased the George Blevins loan as to how the interest should be paid, and that it was to be paid by the Illinois Valley Trust Company, and that they told him at the time they sold him the mortgage that they would collect the interest for him and remit to him when they collected, and that he has been buying loans and securities from the Illinois Valley Trust Company for several years and always looked to the Illinois Valley Trust Company for his interest payments and payments of the loan, and always delegated the Illinois Valley Trust Company to collect the interest and principal on his mortgages and security.

The certificate involved in the dispute in this case was finally introduced, after several objections made on the part of the plaintiff, as defendant's exhibit A-1. It contains the name of the Graves Farm Loan Investment Company at the beginning of its first paragraph and recites the general transaction with relation to the loan, and then proceeds in nine paragraphs to guarantee collection of the loan, including the notes for interest and the principal sum. We are of the opinion with relation to this certificate that no error was committed in introducing the same, and in view of the analysis of the cases hereinafter made we can see no harm done by its introduction.

One other matter should be gone into, prior to analysis of the cases involved in the principle to be announced by the court. This is with relation to the testimony of the defendant Burford relative to the method of collection of the coupon notes, and especially the

final note of $150 and the principal sum of $2,500. Being questioned upon whether he paid these before they were due or at the time they were due, defendant Burford testified as follows:

"Q. You paid them before they were due? A. Yes, I paid them at the time they were due. Q. How much in advance of the due date would you say that you paid them? A. I don't remember. Q. They became due on the first of April each year? A. Yes. Q. How much prior to April 1st would you remit to the Graves Farm Loan Investment Company? A. I am sorry to say, but I can't tell you. Q. What is your best judgment? A. I expect within a week."

He then testified that he paid the four interest payments and that when the last interest became due he paid that payment and the principal sum necessary to retire the loan. There is then found in the case-made a stipulation which is in the following words:

"It may be stipulated and agreed by and between counsel for plaintiff and defendants, that all interest payments were paid prior to the maturity of said interest payments, to The Graves Farm Loan Investment Co., at Pittsburg, Kansas."

A great deal of stress seems to be placed upon the payments before they were due. This payment before maturity is mentioned in Green v. Struble, 141 Okla. 207, 284 P. 895, and Bale v. Wright, 120 Okla. 174, 252 P. 56. The syllabus in Green v. Struble, supra, is as follows:

"The payment of negotiable promissory note before maturity by the mortgagor or his grantee, when made to the mortgagee not in possession of the note and mortgage, is not binding upon an assignee thereof who has possession of the note and mortgage at the time of payment, unless he has expressly or impliedly authorized such payment. Bale v. Wright, 120 Okla. 174, 252 P. 56."

Although it was stipulated that these payments were made prior to maturity, it was never shown that they were not paid within a reasonable anticipation of maturity, and the evidence reflected that the Graves Farm Loan Investment Company wrote defendant Burford that the last payment was due and required that he send the same a few days before maturity. Plaintiff fails to show where a few days before or a few days after maturity would make any difference in this case, or in the case of Bale v. Wright or Green v. Struble, supra.

Subsequent to the opinion in those cases this court had before it for consideration Beasley v. Sparks, 163 Okla. 15, 20 P. (2d)

584. In that case in the first syllabus it is said:

"It is the settled rule that the question of agency and the scope and extent of the agent's authority are to be gathered from all the facts and circumstances in evidence, and are to be determined either by the jury or the court as a trier of fact."

Quoting from the opinion the court said:

"The testimony of plaintiff was positive and direct that he had never authorized Graves-Newman Investment Company to collect either principal or interest for him, and that he was at all times in possession of the note, and also had always kept possession of the coupons until he received payment from Graves-Newman Investment Company. Plaintiff contends that, when defendant paid Graves-Newman Investment Company without receiving the note and without that company having possession thereof, he did so at his peril.

"In support of this contention plaintiff cites Chase v. Commerce Trust Co., 132 Okla. 245, 270 P. 73, and other cases holding to the same general effect. The rule is well established that 'Payment of a negotiable note before maturity to anyone other than the holder thereof or his duly authorized agent to receive such payment, is at the risk of the payer.' Green v. Struble, 141 Okla. 207, 284 P. 895; Bale v. Wright, 120 Okla. **174, 252 P. 56.**

"But the question of agency when made an issue in a case is a question of fact to be determined either by the jury or by the court as a trier of fact, from all the facts and circumstances in evidence connected with the transaction, and like any other question of fact, may be proved by circumstantial evidence. Dandois v. Raines. 115 Okla. 88, 241 P. 1099; Catlin v. Reed, 141 Okla. 14, 283 P 549, 67 A. L. R. 1410; Walker v. Beveridge. 107 Okla. 147, 231 P. 217. All the facts and circumstances and the course of dealing by the parties may be considered in determining the question of agency."

If the situation arose similar to Green v. Struble, or even Bale v. Wright, supra, we can see where it might make a difference as to whether payment were made before or after demand of an alleged agent. But where, as in this case, a general course of conduct is alleged to exist, it could only be considered by the jury to determine whether, taken with all the other facts, the Illinois Valley Trust Company constituted the Graves Farm Loan Investment Company its agent. From the light of the testimony of these two witnesses Ryan and Kelch, the jury was warranted in finding that the plaintiff generally entrusted the collection of these papers to the Illinois Valley Trust Company, and that the Illinois Valley Trust Company entrusted

the collection generally to the Graves Farm Loan Investment Company.

The argument of the plaintiff appears to be based also upon the assumption that there must be an actual delivery of the negotiable instrument by the plaintiff before there is an authorized agency, but the cases cited do not support this argument. In Chase v. Commerce Trust Co., cited in Beasley v. Sparks, supra, and relied upon by the plaintiff in this case, the distinction is not taken upon the delivery of the instrument, but upon the question of agency. In Hoffman Bros. v. First National Bank of Quapaw, 159 Okla. 81, 14 P. (2d) 412, the court said:

"An actual agency to collect negotiable paper may arise by implication from a course of conduct, irrespective of the matter of possession of the instruments as evidence of authority."

Although the fact situation is somewhat different to the case at bar, the rule is conclusive of the fact of necessity of actual physical delivery of the note by plaintiff. So it will be seen that Chase v. Commerce Trust Co., together with Green v. Struble and Bale v. Wright, supra, as suggested above, were not based upon the failure to deliver the papers nor the failure to wait until the paper was due, but rather upon the failure of the facts to support agency. In this connection we cite Brouse v. Cox, 129 Okla. 130, 263 P. 1088. In that opinion this court said:

"The general rule is that an agent has no implied power to delegate his powers to a subagent, and anyone employed by him as a subagent does not become the agent of the principal, without the principal's consent, but such power may be implied where the powers of the agent are general and the necessity for the appointment of a subagent is apparent from the nature of the business."

Brouse v. Cox, supra, was cited in Green v. Struble, supra, and distinguished on the ground that in the latter case agency was shown such as to justify the appointment of a subagent.

Subsequent to these opinions this court considered a similar state of facts in Illinois Valley Trust Co. v. Sherley, 159 Okla. 90, 14 P. (2d) 385, and therein the court said:

" 'Agency to collect money for the owner of a note, when made an issue, is a question of fact to be determined, in proper cases by the jury, from all the facts and circumstances in evidence.' Swearingen v. Moore, 138 Okla. 24, 280 P. 295."

In Swearingen v. Moore, supra. "actual physical possession" of the note by plaintiff was relied upon and admitted. In that case there was also introduced the application making the original mortgagee the agent of the defendant for collection. Notwithstanding all this the court said, in affirming a verdict and judgment for the defendant:

"Agency to collect money for the owner of a note, when made an issue, is a question of fact to be determined in proper cases by the jury, from all the facts and circumstances in evidence.

"The general rule is that an agent in whom is reposed trust and confidence, or who is required to exercise discretion or judgment, may not entrust his duties to another without the consent of his principal. But express authority to appoint subagents is not always necessary. Such authority may be implied when the agency from its very nature is such as to make the appointment of subagents necessary and proper."

In the opinion the court said:

"Plaintiff replied by general denial, and specifically denied that the Security Land Credit Company was her agent, and particularly denied that she had at any time or in any manner appointed or designated the Security Land Credit Company or any of its officers or employees as her agent, and alleged that she had at all times had and held the actual physical possession of the note and mortgage, and that no person was authorized to collect any part of the principal of said note before its maturity. * * *

"There are 19 assignments of error, but plaintiff in her brief says:

" 'The only questions of real issue in the case were (a) whether the plaintiff, either directly or through an agent, authorized the defendants to make the payments on the principal note, and at the time such payments were attempted to be made; (b) whether or not the Security Land Credit Company had authority to receive and collect the payments attempted to be made on the principal note, and thus bind the plaintiff.'

"We think this true, and that the only question to be determined is whether there is any competent evidence of agency tending to support the verdict of the jury. This is substantially the only question involved."

In Brouse v. Cox, supra, we said:

"We do not wish to be understood as holding that the mere placing of the notes or coupons by plaintiff with Robinson, Catlin, Mulford & Smith, for collection, would authorize that firm to employ a subagent for the purpose of collecting same, but when she clothed them with authority to handle her business generally in such way as they saw best, and to use such methods as they chose,

then if reasonable necessity arose for the appointment of a subagent, authority was implied to appoint such subagent."

It is not necessary to analyze further the cases in the light of facts submitted to the jury, the instruction on agency not objected to, and the holdings of this court mentioned above, especially Brouse v. Cox, Swearingen v. Moore, and Illinois Valley Trust Co. v. Sherley, supra.

The judgment is affirmed.

OSBORN, V. C. J., and BUSBY, PHELPS, CORN, and GIBSON, JJ., concur. McNEILL, C. J., and RILEY and BAYLESS, JJ., absent. WELCH, J., not participating.