## DeWOLF v. CHURCH et al.

No. 26263.    May 4, 1937.

Melton & Melton, for plaintiff in error.

Morris & Wilhite, for defendants in error.

CORN, J. For convenience the Pittsburg Mortgage Investment Company will be referred to as mortgagee, the defendants in error as defendants, and the plaintiff in error as plaintiff.

It appears that on February 16, 1923, the defendants made, executed and delivered to the mortgagee their promissory note for $1,600 due and payable on November 1, 1932, with interest thereon at the rate of 6 per cent. per annum, payable annually (except the first payment) according to the tenor of ten interest coupons, the first of such coupons being for $64, and the remaining coupons being for $96 each, both interest and principal being payable at the office of the mortgagee in Pittsburg, Kan. The note further provided that the defendants could pay upon the principal the sum of $100 or any multiple thereof on any interest due date, on and after November 1, 1924, by giving the mortgagee 60 days' notice of their intention to make such payment. The note further provided:

"* * * If default be made for ten days in the payment of any sum, either principal or interest, after the same becomes due and

payable according to the terms thereof, then the whole amount herein promised to be paid, shall, at the option of the holder hereof, at once become due and payable."

As security for said note the defendants made, executed, and delivered to the mortgagee a real estate mortgage covering a tract of land located in Caddo county, Okla., which mortgage provided that in the event the defendants made default in the payment of interest when due, the whole sum remaining due and unpaid should immediately become due and payable, at the option of the holder thereof, and also provided that the note was due and payable at the office of the mortgagee.

On the same day the note and mortgage were made, executed, and delivered, the defendants also made, executed, and delivered to the mortgagee their written application for the loan. This application, among other things, provided:

"I, the undersigned, Alfred C. Church, of Cogar post office, county of Caddo, state of Oklahoma, do hereby appoint the Pittsburg Mortgage Investment Co., of Pittsburg, Kan., my agents to procure or make a loan for me of sixteen hundred & no/100 dollars for the term of 10 years, with privilege of prepayment after Nov. 1st, 1923 at six per cent. per annum, interest to be paid annually, on the first days of Nov. and— principal and interest payable at such place as the lender may direct and secured by first mortgage of approved form, on real estate hereinafter described. If this application is accepted, I will take money and have the loan commence to bear interest on March 1st, 1923. * * *

"I do hereby constitute and appoint the Pittsburg Mortgage Investment Company my attorneys, irrevocable, for me and in my name, place and stead, to procure this loan from any person, persons or corporations, and to forward to the holders of notes for principal and interest, the money as the same becomes due from time to time, and the principal whenever it may from any cause become due and payable, hereby ratifying and confirming all that my said attorneys may do in the premises, as fully as if done by myself."

On March 5, 1923, the mortgagee sold, assigned, transferred, and delivered to the plaintiff the note and mortgage, and the assignment was recorded in the office of the county clerk of Caddo county on March 15, 1923. Along with the note and mortgage, the mortgagee forwarded to the plaintiff the application for the loan, and the plaintiff has ever since retained possession of these instruments.

It appears that the defendants paid to

the mortgagee the first seven interest coupons (1923 to 1929) as and when they became due; and that as each payment was made the mortgagee mailed to the defendants and said defendants received written acknowledgments of the payments as follows:

"Pittsburg, Kansas _____

"Dear Sir:

"We acknowledge receipt of your remittance of _____ in payment of the following items due _____.

"Coupon          $_____
"Note            $_____
"Int. on note    $_____
"Total           $_____

"Same will be mailed you as soon as received from the holder.

"Pittsburg Mortgage Investment Company
"(Signed) J. Luther Taylor, President."

These receipts bore their respective dates and showed the amount of money received. Otherwise each of the seven receipts was identical.

The seven interest payments (1923 to 1929) made by the defendants to the mortgagee were forwarded by the mortgagee to the plaintiff, and the plaintiff would thereupon detach the appropriate interest coupon, mark the same "paid," 'and forward it to the mortgagee, and said mortgagee would in turn forward such coupon to the defendants. There appears nothing on the paid coupons to indicate by whom they were marked "paid."

The record further discloses that in October, 1929, the defendants obtained mortgagee's permission to pay $1,000 upon the principal of the note on the next interest due date, to wit, November 1, 1929; that on October 21, 1929, the defendants paid to the mortgagee the sum of $1,096, of which $1,000 was to be applied on the principal and the remaining $96 upon the interest then due. The mortgagee did not have possession of either the note or mortgage at the time this payment was made, or at any time after it sold and transferred them to the plaintiff. Apparently the mortgagee forwarded to the plaintiff the sum of $96 covering the interest then collected, because the plaintiff in his petition does not claim a default in this payment. The plaintiff testified that all interest coupons had been paid except the last three (1930 to 1932). Therefore, the defendants received credit for all interest they actually paid, except

an interest payment of $36 also made to the mortgagee in October, 1930, for interest due November 1, 1930, on the $600 balance claimed to be due on the note. The mortgagee, however, retained the $1,000 and the $36 interest payment and did not remit the same to the plaintiff.

On October 18, 1931, the plaintiff wrote the defendants the following letter:

"Alfred C. Church, Esq.,
    "Cogar, Okla.,

"Dear Mr. Church:—I hold the note and mortgage of $1600.00 due Nov. 1st, 1932, on the SE¼ Sec. 9-10-9 originally given to The Pittsburg Mortgage Invt. Co., to whom I think you heretofore have been making payment of interest.

"This company, I presume you know, has gone into bankruptcy, anyhow it does not represent me, and it has no authority to receive any more payments on this loan.

"Will you, therefore, kindly make payment of the interest directly to me, when due, on Nov. 1st, or send the same to me thro The Peoples Bank of this place, and I will send to you or turn over to said Bank the coupon when it is paid.

"Very truly yours,
    "W. C. DeWolf."

On May 10, 1932, the plaintiff commenced this action to recover the principal amount of the note ($1,600) and interest, and to foreclose his lien created by the mortgage securing said note.

The defendants answered, admitting the execution and delivery of the note and mortgage, but for their first defense pleaded that sometime prior to November, 1929, they had paid the mortgagee, the payee named in said note, **as agent of the plaintiff,** the sum of $1,000 on the principal amount of the note, and the sum of $96 for interest due November 1, 1929; that on October 9, 1930, they also paid the mortgagee, as agent for the plaintiff, a further sum of $36 for interest due on the balance of the principal amount of the note ($600). The defendants further pleaded that they had tendered the plaintiff the sum of $36 for interest due on November 1, 1931, but that plaintiff had refused to accept the same, and that, therefore, he was not entitled to recover.

For their second defense the defendants pleaded that they never at any time had any knowledge or notice that the mortgagee had assigned or transferred the note and mortgage to the plaintiff; that the payments made by them to the mortgagee were made in good faith, in the belief that said mort-

gagee was the owner and holder of said note and mortgage 'at the time the payments were made; that plaintiff permitted the mortgagee to collect the interest on the note; and that the plaintiff was, therefore, estopped to deny the authority of the mortgagee to make such collections on his behalf.

For his reply the plaintiff under oath pleaded that by reason of the execution and delivery of the loan application the mortgagee was the agent of defendants in handling and transmitting the payments made; that soon after he purchased the note and mortgage involved he caused his assignment to be filed for record in the office of the county clerk, and that the recording of the assignment was sufficient notice to the defendants that the plaintiff was the owner and holder of the note and mortgage. Plaintiff specifically denied that the mortgagee had his authority to act as his agent in making 'any of the collections involved, particularly the $1,000 payment upon the principal, and further pleaded that if the defendants actually paid said amount of money to the mortgagee, it had never been transmitted to him. Plaintiff also denied that he was guilty of any conduct which induced the defendants to believe that the mortgagee was his agent.

Issues having been thus joined, the case came on for trial before the court 'and a jury, but at the conclusion of all the evidence, in view of the fact that there appeared no conflict in the evidence, the trial judge discharged the jury and rendered judgment for the plaintiff in the sum of $600 and interest from November 1, 1929, and a decree foreclosing the mortgage. To this action of the court the plaintiff did not object. In rendering such a judgment the court gave the defendants credit for the $1,096 payment made to the mortgagee on October 21, 1929, but refused to allow them credit for the $36 interest payment made in October, 1930. The trial court further held that the defendants had not made a sufficient tender of the interest admittedly due and for that reason the plaintiff was entitled to recover the reduced amount of the note ($600) and interest from November 1, 1929, and rendered a decree foreclosing the mortgage. There has been no cross-appeal, 'and since the plaintiff admitted having received the interest payment of $96 due November 1, 1929, this appeal involves only the question whether the trial court was correct in holding that the defendants were entitled to a credit of the $1,000 payment upon the principal made to the mortgagee.

The trial court was of the opinion that the note involved was ·nonnegotiable and for that reason the defendants could assert as against the plaintiff (as assignee) all defenses they had or could have asserted against the mortgagee. This contention is based upon the fact that the note provided that "if default be made for ten days in the payment of any sum, either principal or interest, after the same becomes due 'and payable according to the terms thereof, then the whole amount herein promised to be paid shall at the option of the holder hereof at once become due and payable." It is contended that the phrase **"shall at the option of the holder hereof"** renders the note nonnegotiable for the reason that the exact due date is not fixed. With this contention we cannot agree. Since the enactment of the Uniform Negotiable Instrument Law the proper rule is stated in 8 C. J., sec. 240, p. 139, as follows:

"A provision in a note that the whole shall be due, either absolutely or at the option of the holder, on default in the payment of any installment, or in the payment of the interest. does not affect its negotiability. This rule also applies, where a note is to be construed in connection with a mortgage which provides for an election to declare the principal due on default in the payment of the interest."

In Sommers v. Gouldén, 147 Okla. 51, 294 P. 175, 72 A. L. R. 265, we had occasion to construe a similar provision, and we there held that such a provision did not render the note nonnegotiable. See, also, Moore v. Interstate Mortgage Trust Co., 172 Okla. 471, 45 P. (2d) 485. We now regard it as settled law that the fact that the date of payment may be accelerated by the default of the maker of a note does not affect the negotiability of the paper.

The defendants call attention to First Nat. Bank v. Watson, 56 Okla. 495, 155 P. 1152; Bell v. Riggs, 34 Okla. 834, 127 P. 427, and other authorities, as sustaining their view. Either these cases were decided prior to the enactment of the Uniform Negotiable Instrument Law, or were construing similar provisions in notes made prior to the enactment of this law, and for that reason they are inapplicable in this case.

The plaintiff for seven years received interest payments from the Pittsburg Mortgage Investment Company knowing that the defendants were making the payments **to**

that company, without ever in any way communicating to the defendants the fact that he held the note and mortgage, until October 18, 1931, almost two years after the $1,000 was paid, when he advised the defendants that the Pittsburg Mortgage Investment Company had gone into bankruptcy.

The statement ·in the letter, "and it has no authority to receive any more payments on this loan," justifies the inference that, prior to going into bankruptcy, the Pittsburg Mortgage Investment Company did have authority to receive payments on the loan. But, aside from this, the plaintiff, from the day he acquired the note and mortgage in question, knew they were made payable at the office of the Pittsburg Mortgage Investment Company, at Pittsburg, Kan. This was a part of the note and mortgage contract and binding upon the parties.

In 48 C. J. 593, it is said:

"When the place of payment is fixed by agreement, express or implied, payment must be made at the place agreed upon unless both parties consent that it be made elsewhere, and the creditor should be present in person or by agent to receive it. * * *" Dillingham v. Hook (Kan.) 4 P. 166; Chekowsky v. Central Coal Co., 124 Kan. 471, 260 P. 620; Weyand v. Park Terrace Co., 202 N. Y. 231, 95 N. E. 723; McCray Refrigerator Co. v. Simms (Tex. Civ. App.) 268 S. W. 275.

The note in question gives the makers the privilege to pay $100 or any multiple thereof or all the principal at any interest paying time after November 1, 1924, by giving the required notice.

By the terms of the note the defendants were required to pay both interest and principal at the office of the Pittsburg Mortgage Investment Company at Pittsburg, Kan., unless plaintiff in some way communicated to them his consent or desire that the payments be made elsewhere, 'and he was bound to know that he must either be present in person or have an agent at the place designated to receive the payments; and he was also bound to know that by the terms of the note the defendants, by giving the required notice, could mature part or the whole of the principal at any interest-paying time after November 1, 1924, and if they did so, they had the right and were required to make the payments at the place designated, unless they were otherwise advised.

It was, therefore, plaintiff's duty to. in-form the defendants that he was the holder of the note and mortgage and instruct them as to his wishes relative to making payments other than at the place designated in the note. This he failed to do; he remained silent until long after the payment of the $1,000, until after the Pittsburg Mortgage Investment Company had gone into bankruptcy.

The court found that defendants were not estopped from setting up the payment of the $1,000 on the principal of the note as 'a partial defense thereto. This is, in effect, a finding that, under the facts as shown by the evidence and the circumstances of the case, the plaintiff is estopped from denying the authority of the Pittsburg Mortgage Investment Company to receive for him the $1,000 payment on the principal of the note.

The finding of the court, in our judgment, is amply sustained by the evidence, and this case is clearly within the rule that, where the holder of a note, by his acts and conduct, in the light of all the facts and circumstances of the case, leads the maker to believe one has authority to receive payment of the note or part thereof, and payment is made to such person in good faith under the belief that he has authority to receive such payment, the holder is estopped from denying such authority. See Kelch v. Blevins, 177 Okla. 163, 57 P. (2d) 1189, 'and cases cited therein.

Judgment of the trial court affirmed.

OSBORN, C. J., BAYLESS. V. C. J., and BUSBY, WELCH. and HURST, JJ.. concur. PHELPS, J., dissents. RILEY and GIBSON, JJ., absent.