PAYNE, HUNTINGTON & CO. VS. FLOURNOY.

1. PRACTICE: *When too late to object to an answer for want of verification.*
   After replication, trial and judgment in the court below, it is too late to raise the objection for the first time in this court, that the answer is not verified.

2. EXECUTOR: *Cannot appropriate assets to particular debts.*
   An executrix, to whom notes are executed for personal property and rent of the land of her testator, holds them in her fiduciary capacity as a part of the general assets of the estate, and has no power

by assignment as collateral security or otherwise, to appropriate them to the payment of one creditor to the exclusion of others.

3. AGENCY: *Principal's right of revocation not affected by the disposition to be made of the proceeds, etc.*

Where the payee of a note indorsed and left it with a member of a firm to which she was indebted, for collection, and directed him to apply the proceeds to the payment of her indebtedness, it was a mere direction to an agent, and did not impair the right of the payee to collect the note or change the direction at pleasure.

4. NOTICE: *Of facts apparent on negotiable paper.*

The fact that a note is made payable to an executrix, and by her indorsed in her representative capacity, is notice that it is assets in her hands.

5. PLEADING AND PROOF: *Must correspond.*

A fact that is proven, but not averred in the pleadings, can avail nothing.

APPEAL from *Arkansas* Circuit Court.

Hon. HENRY B. MORSE, Circuit Judge.

*Pindalls*, for appellants.

*Gallagher & Newton, contra.*

WALKER, J. The defendant Thomas C. Flournoy executed to Elizabeth J. Flournoy, the executrix of the estate of Thompson B. Flournoy, on the 2d day January, 1867, his note for $7,000, due the 1st of December of that year, and two other notes, dated 8th of January, 1867, one for $3,100, the other for $1,300, both due the 8th of December of that year. The first of these notes was given for the rent or lease of a plantation belonging to the estate of Flournoy, and the other two for stock and farming utensils, which also belonged to the estate. The notes were made payable at the office of I. P. Harrison & Son, in New Orleans. With these notes there was also an agreement of defendant with the payee, Elizabeth J. Flournoy, that he would ship cotton to the house of I. P. Harrison & Son, to pay the notes as they became due.

The estate of Thompson B. Flournoy was indebted to the firm of Payne & Harrison to the amount of $40,000, and soon after the notes were executed, they were indorsed in blank by Johnson, as agent for the payee, and placed in the hands of I. P. Harrison, one of the firm of Payne & Harrison, for collection. The blank indorsements were filled up, making the notes payable to Payne, Huntington & Co.

On the 14th of July, 1869, Jacob Payne, George W. Huntington and William H. Dameron, partners doing business under the name and style of Payne, Huntington & Co., brought their suit in the circuit court of Arkansas county against T. C. Flournoy, the payor of the notes.

The defendant filed his answer, in which he admitted the execution of the notes, but denied that they were assigned to plaintiffs for a valuable consideration; that the notes were left with I. P. Harrison merely for collection, and were indorsed for that purpose only; and that afterwards and whilst the notes were the property of the payee, that he had fully paid them.

This answer was not sworn to, as required by our code of practice, and for this defect might have been stricken out, but as no exceptions were taken to it for this cause, it is too late after replication and trial before a jury, and final judgment, to raise the objection, for the first time, in this court.

The case was submitted to a jury and a verdict returned in favor of the defendant. The plaintiffs moved for a new trial which was overruled, exceptions were taken and an appeal to this court.

· Exceptions were taken to several instructions given at the instance of the defendant, as well as well as to those refused by the court when asked by the plaintiffs, which, from the conclusions at which we have arrived as to the law governing the case, will be disposed of in the further consideration of the case.

It is contended on the part of the plaintiffs, that the notes in suit left with Payne & Harrison, as collateral security for the payment of a debt due by the estate of T. B. Flournoy to them, and, being indorsed in blank, Payne & Harrison had a right to deliver the notes to Payne, Huntington & Co., the plaintiffs in this suit.

On the part of the defendant, it is contended, that the notes were not placed in the hands of Payne & Harrison as collateral security, but were in fact left with I. P. Harrison, a member of that firm, for collection, with instructions to apply the money when collected to the payment of the debt which the estate of Flournoy owed to the firm of Payne & Harrison, and the indorsement on the notes was made to facilitate collection and for no other purpose.

In the investigation of the question of the ownership of these notes, and as to whether they did or did not pay to the plaintiffs by assignment, and vest in them a right of action against the payor, the defendant in this action, it will be important to inquire, not only whether from the facts as disclosed in evidence, an assignment of the notes was made, upon such consideration and under such circumstances as to divest the payee, Mrs. Flournoy, of her title to them, but also as to whether she, holding them as she did, as a trustee, to be collected for the benefit of the creditors of the estate of T. B. Flournoy, and for his heirs and distributees, had the power to sell, or to assign the notes which were held by her as the executrix of the estate as assets to be distributed under the provisions of the statute.

These notes were executed to the payee, as the executrix of the estate of Flournoy, and given in consideration of rents and personal estate of the testator, T. B. Flournoy, sold and rented to the defendant, who executed the notes in suit. Jilson P. Johnson, the agent for the payee, deposed that, at

the request of the executrix, he went to New Orleans, to see Payne and Harrison concerning the indebtedness of the estate to them. That he took with him $4,000, and the notes in suit for the purpose of making an arrangement with them to take the money and notes in part payment of the debt which they held against the estate of T. B. Flournoy, deceased; that Payne, with whom he was trying to make the negotiation, positively refused, under any circumstances to receive the notes in part payment of any part of the debt, and refused to have anything to do with them, even as security for the debt. That after repeated efforts to effect this purpose had failed, he abandoned all hopes of effecting this arrangement. He agreed with Payne to pay $4,000 on the claim against T. B. Flournoy's estate; and as two of the notes were payable at the house of I. P. Harrison & Son, he would leave the notes there for collection, subject to any arrangement he, Johnson, might make with T. C. Flournoy concerning them. Witness states that he saw I. P. Harrison, one of the firm of Payne & Harrison, and told him that he had been unable to make any arrangement with Payne to receive the notes as part payment for the debt, or even as security for the debt, and left the notes with Harrison for collection—his object being, in the indorsement of the notes, simply to give authority to collect them.

I. P. Harrison deposed: That the notes were handed to him in January, 1867, by Jilson P. Johnson; that I. P. Harrison & Son, of which firm he was a member, were at the time the merchants of T. C. Flournoy; that the estate of T. B. Flournoy was not doing business that year.

The circumstances under which the notes came into the possession of Payne & Harrison were, that Jilson P. Johnson called, and asked Payne & Harrison to credit the account of the estate of T. B. Flournoy with the amount of the notes, and with $4,000 cash. Witness says he told Johnson that he could

not do so without the consent of Payne. Johnson went down stairs to consult with Payne, and when he returned, said that Payne refused. The notes were then put into his, Harrison's, hands, with the statement that when the notes were collected, the account of the estate of T. B. Flournoy with Payne & Harrison would be credited with the amount collected. That witness made no arrangement with Johnson except to collect the notes, and to credit the account of the estate with the amount when collected. Witness says, this was all that took place at the time the notes were placed in his hands. But further states, that Johnson conferred with him, as a member of the firm of Payne & Harrison, and that he had nothing to do with his other business, and that when Johnson came back from his conference with Payne, he said Payne had refused to take the notes in payment, but had agreed to receive them to be credited, when collected, on the debt against the estate. He recollected nothing said about collateral security. The notes were left to be collected, and proceeds applied to the credit of the debt of the estate to Payne & Harrison.

Payne, the other partner of that firm, says that he did refuse to receive the notes when offered by Johnson in part payment of the firm debt against Flournoy's estate, but that he agreed to receive them as collateral security for the debt, and to credit Payne & Harrison's claim against said estate out of the proceeds of said notes as collected —still holding the estate responsible for so much of the debt as was not credited, and that Johnson agreed to deliver the notes upon the terms thus stipulated, and that he directed Johnson to leave the notes with Harrison.

Evans, the clerk of Payne & Harrison, deposed that he wrote the following receipt, which was read in evidence :

" NEW ORLEANS, January 17, 1867.—Received of Mr J. P. Johnson, agent for Mrs T. B. Flournoy, executrix of the estate

of Thompson B. Flournoy, deceased, $4,000 in currency, and the following notes (describing them). The $4,000 currency now to be applied, and the above described notes to be applied, when collected, to the payment of the indebtedness of T. B. Flournoy's estate to Payne & Harrison, as described in a transcript from the record of certain allowances made at the March term, 1866, of the probate court of Desha county, Arkansas, against the estate of Flournoy, and in favor of Payne & and Harrison. (Signed)   PAYNE AND HARRISON."

Evans states that he entered these notes upon the books of Payne & Harrison, as notes for collection and not on the books as notes which belonged to the firm. .

The following letter was also given in evidence, written in answer to one by J. P. Johnson, dated November 27, 1867, requesting I. P. Harrison & Son to return the notes left with them for collection, to which they replied :

" Your favor of 27th ult. is received, requesting us to return you Mr. T. C. Flournoy's notes which you handed to us to be applied in payment of a debt due by the estate of T. B. Flournoy to Payne & Harrison.   Payne & Harrison gave you their receipt for these notes, and we are not authorized to return them whilst their receipt is out.   Be pleased to send the receipt to us, and we will use our influence with P. & H. to send the notes to you.   We have not the power to do it ; but suppose they will not object.   *   *   *   (Signed) I. P. HARRISON & SON.   Written by I. P. Harrison."

Harrison admits in evidence that he wrote this letter, but assumes that he was not very sincere in making his statements, for considerations of policy.

T. C. Flournoy states that he was in New Orleans in 1869, he thinks, before suit was brought against him.   He says : I. P. Harrison sent for me to come and see him, and when I went, he asked me if I had said anything to Mr. Payne about

Payne, Huntington & Co. vs. Flournoy.

his giving up my notes; I answered that I had not, but that I intended to do so; and he told me not to do it. He said, I will do it myself; I do not want you to say a word to him; let me manage him. I can get him to give them up to you, but you could do nothing with him, he is a very contrary man. Mr. Harrison then said it is an outrage upon you, and he ought to give the notes up to you, and if he does not, and should sue you, have me summoned, and my testimony would settle it, and that I would have nothing to pay. I saw Mr. Harrison again the next day, and he again insisted that I should not speak to Mr. Payne, that he was working it through Mr Huntington, and that I should soon get the notes. He also stated to me that the notes were only left with them for collection, but the proceeds to be applied to the payment of the debt due by Flournoy's estate to them. Harrison also remarked to me that if all the money I had paid to Mrs Flournoy had been applied to the payment of the debt due Payne & Harrison, there would have been no trouble about the notes.

This is all of the evidence material to the question of assignment, which is denied in the first paragraph of defendant's answer.

The first question to be determined is: Had the executrix power to appropriate the assets of the estate to the payment of one of the creditors in preference to others? Edwards, in his work on Bills and Notes, p. 244, says: "The transfer of notes and bills being a contract, it is of course necessary that the payee or holder of the instrument should, in the first place, have a legal capacity to do the act." Had the executrix of the estate of Thompson B. Flournoy this power? We must hold that she had not. She was a mere trustee, and derived all of her power and authority, either from the provisions of the will, or from the law. Under the statute, she is required to take into her possession the whole of the estate of her testa-

tor, to charge herself with it, and, annually, to report to the probate court, the whole amount of the estate which has come to her hands, the amount of cash collected, the amount paid in expenses, and the balance of cash on hand.   The sum so ascertained by the court upon settlement is held as a common fund for the payment of the debts of the estate.   All creditors are required to present their claims to the court for allowance and classification.   No claim is to be paid until thus presented and classed, and an order for payment made by the court, giving preference in payments to claims of prior right to satisfaction according to class.

If an administrator or an executor makes payment without an order for that purpose, he does so at his peril, and will not upon settlement be allowed credit for the money so paid. *McPaxton v. Dickson et al.* 15 Ark., 41.   Nor can an executor or administrator set off a debt contracted by his testator or intestate, against one contracted with themselves as such. Because this would disturb the equitable course of administration by appropriating part of the assets which properly belongs to the common fund for distribution, to the satisfaction of a single debt, which may be of lower grade than others.   *Bizzell v. Stone et al.* 12 Ark., 378.

The power of an executor or administrator to assign notes and bonds belonging to an estate, as provided in sec. 96., ch. 4, Gould's Dig., 120, relates to the payment to creditors, legatees and distributees, whose claims have been allowed and classed and an order for their payment made, and is in effect a substitution of debts for money, should the creditor or distributee choose to receive them, and gives no power to sell, assign or dispose of debts, part of a common fund, in payment of the debts of creditors before, upon settlement, it is ascertained how much is due them.   So far from conferring a general power to assign notes and bonds of estates, this enact-

ment, conferring power for a special purpose, negatives the presumption that any such general power exists.

A fiduciary agent cannot transfer assets of an estate without an order of court for that purpose. *Burbank, Curator, v. Payne & Harrison*, 17 La. An., 15. In the case of *Nickolson v. Chapman*, 1 La. An., 222, where a syndic made an indorsement of a note which belonged to the estate of which he was syndic, it was held that his mere indorsement of the note as syndic was notice that the note belonged to the estate, and could not be discounted without an order of court; and, that the assignee who took the note thus assigned, acquired no right under it, adverse to the party to whom it belonged.

In the case of *Miltenberger v. McGuire*, 15 La. An., 486, where a commercial firm were the holders of notes and remitted them before maturity to another firm to be collected, and the money, when collected, to be applied in payment of a debt in favor of the latter firm, and was indorsed to render the collection more easy, it was held that the firm so receiving the notes are to be considered agents for the collection of the notes, and that the original holder of the notes had never ceased to be the owner of them.

When a person to whom an agent transfers negotiable paper is unacquainted with the agency, it is his duty to ascertain the extent of the agent's authority, and he can acquire only such interest as the agent is authorized to convey. Edwards on Bills and Notes, 252.

These authorities fully sustain us in holding that the executrix of the estate of T. B. Flournoy held these notes in her fiduciary capacity as part of a general fund out of which to pay the debts against the estate, and had no power by assignment, or otherwise, to appropriate them to the payment of the debt of one creditor to the exclusion of others.

But if such was not the case, we think the evidence falls far

short of showing a valid transfer or assignment of the notes. It shows no sale absolutely, or as collateral security. They did not pass into the hands of I. P. Harrison & Son, nor to Harrison for Payne and Harrison, in the due course of trade for a valuable consideration; there was no contract between these parties, no consideration passed, no remedies parted with, no debts delayed or postponed. But the weight of the evidence tends to show that the notes were left with I. P. Harrison by the agent of the payee for collection. This was the voluntary act of the payee, without consideration, and as a matter of convenience. The fact that the payee directed that the money, when collected, should be paid to Payne & Harrison in satisfaction of that much of their claim against the estate of T. B. Flournoy, was a mere direction to an agent as to the disposition of the money when collected. The payee had a right to change this direction at pleasure.

The mere act of placing the notes in the hands of an agent, for collection, in no wise lessened or impaired her right to collect the debt and apply the money received differently, if she chose to do so. And this, as appears from the evidence, she has done.

If these notes had passed by assignment to the plaintiffs in the ordinary course of trade for a valuable consideration, as innocent holders, without notice of the facts attending this transaction, the authorities would go far to sustain plaintiff's right of action. But such is not the case. The fact that the notes were made payable to the executrix of the estate of Thompson B. Flournoy, and that they were indorsed in her representative capacity, was notice that the notes were assets in her hands. Plaintiffs were members of the same firm, with one of whom the notes were left for collection, and from whom the notes came into their hands. They knew that the notes did not pass into the hands of Harrison, or of Payne & Har-

Payne, Huntington & Co. vs. Flournoy.

rison, in the course of trade, or upon a consideration. And for this reason, as well as because there was, in fact, no valid assignment of the notes, their action must fail.

It may be, as Payne, one of the firm deposed, that the plaintiffs, under a new firm name, are in fact the members of the firm of Payne & Harrison. Admit all that Payne says to be true, and that the new firm have succeeded to the assets of the late firm of Payne & Harrison, this fact can avail nothing, because there are no averments in the complaint to that effect, and the evidence consequently has no application to the case as made by the pleadings. If the plaintiffs have in fact succeeded to the assets of the late firm of Payne & Harrison, and are, in fact, the same parties, they may have the full benefit of their judgment against the estate of Thompson B. Flournoy in the probate court upon settlement, and an order for the payment of the debts of the estate. In which settlement the executrix is required to account for the money which she received in payment of these notes, and of which the firm of Payne & Harrison, or these plaintiffs, if their successors, will receive their distributive proportion, which is all to which they are entitled.

Thus considering the law applicable to the case, the instructions given to the jury were substantially correct; in fact, more favorable to the plaintiffs than they should have been.

As regards the exceptions taken by the plaintiffs to the decision of the court in permitting certain letters to be read in evidence, it may suffice to remark that the record simply shows that the plaintiff excepted to the introduction of certain evidence at the time the same was offered; but there appears to have been no bill of exceptions taken or signed by the judge, or made part of the record upon the overruling of the motion for a new trial, under the practice, as held in *Lennox v. Pike*, 2 Ark., 14; *Brock v. Saxton*, 5 id., 708. But

if otherwise, from the view which we have taken of the question of assignment, to which the evidence admitted over the objections of the plaintiffs was intended to apply, it could in no wise have changed the result.

There was other evidence introduced which showed clearly that the defendant paid and fully discharged these notes to Elizabeth J. Flournoy, the executrix, and fully sustained the second paragraph of defendants' answer which averred payment.

Finding no error in the proceedings and judgment of the court below, the same is affirmed.