## WHITNEY, Ex'r, v. LOW et al.

No. 18029.   Opinion Filed April 30, 1929.

J. E. Whitehead, for plaintiff in error.

Wimbish & Wimbish, for defendants in error Norman & Fleming.

ANDREWS, J. The parties appear here in the same order as in the trial court.

Plaintiff was executor of the estate of Jennie A. Clark, deceased. He brought a suit on a certain promissory note made by Shed Low and Nellie Low to the Conservative Loan Company on the 15th day of April, 1915. The note became due on the 1st day of May, 1925, and annual interest coupons were attached thereto. The note contained an acceleration clause.

It was alleged that Jennie A. Clark purchased the note for value in due course and that the same was indorsed and delivered to her with an assignment of the mortgage prior to maturity. Default was made in that the interest coupon due November 1, 1923, was not paid, by which the principal note became due. Defendants purchased the land on April 22, 1916. Their amended answer consisted of a general denial, a denial of ownership of the note by the plaintiff, an allegation of the sale of the land by the mortgagors to defendants, and that:

"* * * These defendants paid the note sued upon in full to the Conservative Loan Company. at Shawnee, Okla., who was at that time either the owner of said note, or otherwise, was the agent of the owner for the purpose of collection of said note and the interest due thereon, and was the agent of Jennie A. Clark for the purpose of the collection of the interest maturing on said note and principal thereof, and that by reason thereof the plaintiff herein now has no claim against the lands covered by said note."

The prayer was that the plaintiff take nothing and that defendants have judgment against the plaintiff canceling the mortgage claim.

Trial was had to a jury, a verdict was rendered for the defendants, and the plaintiff appealed to this court. At the trial plaintiff offered in evidence the note, interest coupons, and the mortgage. The note was payable to the order of the Conservative Loan Company at its office in Shawnee, Okla., and bore on its back the following:

"For value received, the within note with coupons attached is hereby assigned to Janie A. Clark without recourse."

The mortgage provided:

"That the parties of the first part will pay said principal and interest at the time when the same fall due, and at the place and in the manner provided in said note and will pay all taxes. * * *"

There is nothing in the mortgage other than this statement to show where the note was payable.

The defendant offered evidence that the interest coupons had been paid by the Conservative Loan Company and the Conservative Loan & Trust Company to George M. Christner & Company, but had not been collected from the borrower; and that George M. Christner & Company was a brokerage office belonging to the Conservative Loan & Trust Company. One of the defendants testified that he and his partner purchased the land from the mortgagors; thereafter he paid one interest coupon and afterwards paid the loan off in the office of the Conservative Loan Company at Shawnee to the "cashier or treasurer, whoever he was"; that he asked for a release and the person to whom he made the payment told him that the release would follow later; that he never heard of Miss Clark and knew nothing of her address; before he made the payment he examined the county records in his county and found no assignment from the Conservative Loan Company; that he had no information that anyone else held the papers, and for that reason he paid the Conservative Loan Company. He testified:

"Q. You did not know who held this mortgage—did you make any effort to find out who held that note and mortgage? A. I did not. I was sure that the Conservative Loan Company held the note and mortgage and went there and paid it. Q. Because they made the mortgage loan? A. They the ones I knew to go and pay. Q. Who told you to pay them? A. I don't know that. I went by the record."

The plaintiff offered the testimony of George E. Curtis that he was the manager of George M. Christner & Company; that he sold the note and mortgage to Jennie A. Clark and she paid therefor $500 on the 1st day of May, 1915; that there was no notice or information that there was any defense to the documents; that the papers were delivered by him to the purchaser and relied upon by her; that neither the Conservative Loan Company nor the Conservative Loan & Trust Company had any authority to receive any money upon the note and mortgage as agent of Jennie A. Clark, and that the interest was always forwarded to him as the agent and manager of George M. Christner & Company.

It is contended by defendants that their amended answer constituted an allegation that the Conservative Loan Company was the agent of the plaintiff and that the veri-

fication of plaintiff's reply was not sufficient under the statute (sections 287 and 293, C. O. S. 1921) to raise an issue as to this agency.

The authorities cited by defendants are not in point. They are cases where verification was necessary to support the denial. Under the facts in this case no verification in support of the denial was necessary.

Section 287, supra, was adopted by the Oklahoma Territory from the Kansas Code. Johnson v. Douglass Glass Co., 8 Okla. 594, 58 Pac. 743. In construing that section in that case that court said:

"In either case the requirement was the same, to wit: a denial under oath, and in either case it was a right which the party could waive; and we take it that this construction of the statute having been made prior to the time of the adoption by the Legislature of this territory of the statute in question, and being the recognized construction of that statute by the Supreme Court of Kansas at the time of its adoption, it is binding upon the court, as we think the facts in the case at bar and the case cited in the Pacific Reporter are, in principle, identical"

—and

"The plaintiff introduced evidence tending not only to prove the purchase and delivery of the goods in question, and to substantiate and sustain this account, but also introduced proof tending to prove the existence of the partnership between the defendants, Harding and Johnson. By introducing evidence to prove facts and circumstances from which a partnership between the defendants might be legally implied, it is clearly shown that it was not the intention of the plaintiff to rely upon the fact that defendant had not legally denied the allegation of partnership contained in the bill of particulars."

This section was adopted by the state of Oklahoma from the territory of Oklahoma. Schedule 2 of the Constitution. This court in Doughty v. Funk, 24 Okla. 312, 103 Pac. 634, said:

"An objection for that reason should be taken by motion to strike, or it will be considered waived. 8 Enc.. Pl. & Pr. 206, says: 'An objection to a want of verification of a pleading is properly taken by motion to strike out' —— citing Warner v. Warner, 11 Kan. 121; Gilmore v. Hempstead, 4 How. Pr. (N. Y.) 153; Fritz v. Barnes, 6 Neb. 435; Webb v. Clark, 2 Sandf. (N. Y.) 647; Indianapolis, etc., Ry. Co. v. Summers, 28 Ind. 521; Vail v. Rinehart, 105 Ind. 6, 4 N. E. 218; Payne v. Flournoy, 29 Ark. 500."

This was the rule followed in Kaufman v. Boismier et al., 25 Okla. 252, 105 Pac. 326, and Jones v. Citizens State Bank, 39 Okla. 393, 135 Pac. 373.

In Standley et al. v. Cruce et al., 57 Okla. 127, 157 Pac. 135, the court said:

"The plaintiff elected to join issue with the defendants on their answer by filing a denial thereto and did not challenge the sufficiency of the same in any way by motion for judgment upon the pleadings or demurrer thereto, but tacitly admitted the sufficiency of the answer by treating the same as verified, and as far as the record shows, the question was never raised in the trial court that the answer was not verified, but the trial was proceeded with as if the answer was sufficient and verified, and the plaintiff now seeks to raise this question for the first time here on appeal. It would be manifestly unfair and not conducive to justice to permit a party to proceed to the trial of a case in the lower court and accept all the pleadings as sufficient to put each party on proof of his cause of action or defense, and after judgment has been rendered, then to allow the loser, for the first time, to here raise a question as to the sufficiency of the pleadings which ought to have been raised and settled in the trial court."

This is the rule followed in Spaulding et al. v. Thompson, 60 Okla. 136, 158 Pac. 509; Priest v. Quinton, 68 Okla. 120, 171 Pac. 1113, and St. John et al. v. Ivers, 124 Okla. 215, 255 Pac. 706.

The defendants filed no motion to strike the reply, but introduced evidence tending to substantiate their plea of agency, and they neither demurred nor moved for judgment, but tacitly admitted the sufficiency of the reply. So far as the record shows, this question was never raised in the trial court, and it cannot be raised in this court for the first time.

The defendants contend that they knew nothing about the mortgagors having made the Conservative Loan Company their agent to collect interest and principal and forward it to the investor, that they knew nothing of either the application for the loan or the loan contract, and that they went to the office of the Conservative Loan Company and paid off this loan after having examined the county records to ascertain who owned it.

They knew nothing of the note, and it was the note that fixed the place of payment. There was nothing in the mortgage to indicate where the note was payable. The defendants had as much information as to who owned the note as they had as to where

the note was payable. They must have assumed that because the note was payable to the Conservative Loan Company it was payable at the office of that company. One of the defendants testified that they made no effort to find out who held the note and mortgage, and there is no testimony to show that they made any inquiry as to where the note was payable. They brought themselves clearly within the rule announced in the case of Chase v. Commerce Trust Co., 101 Okla. 182, 224 Pac. 148, wherein it was said:

"Counsel for the trust company insist that the entire unfortunate condition that has brought about this lawsuit was caused either by the wrongful neglect or the unpardonable stinginess of Frank H. Chase in his failure to spend 75 cents to have his assignment recorded, and seek to invoke the doctrine that where one of two innocent persons must suffer by the acts of a third, the one who enables the third person to occasion the loss must sustain it. But was Chase alone responsible for the situation? The Commerce Trust Company knew that the note was negotiable and was not in the possession of the Aurelius-Swanson Company, and this was sufficient to place it on inquiry to ascertain who the true owner was. It was possessed with the means of absolute protection, as it had only to withhold payment until it received the note, and thus fully protect itself, but it neglected this simple precaution which was required of it not only by law, but by ordinary prudence. While one of the parties must suffer on account of the dishonesty of Aurelius-Swanson Company, yet Chase did not act to induce the trust company to make payment to Aurelius-Swanson, but it acted imprudently, without due inquiry and care, and must be held to have made the payment at its peril."

Plaintiff contends: First. That the court erred in overruling the demurrer of the plaintiff to the evidence of the defendants. Second. That the court erred in submitting the case to the jury. Third. That the court erred in giving instruction No. 1. Fourth. That the court erred in giving instruction No. 2. We think there was error in all of these matters assigned.

There was error in overruling the demurrer to the evidence and in submitting this case to a jury.

Under the pleadings the burden was upon the defendants to prove that they paid the money and that they paid it to the agent of the plaintiff. Agency is never presumed, but is a question of fact to be proven, and the acts and declarations of the agent are not sufficient of themselves to establish the fact of agency. Davis v. Decker Bros. Co., 92 Okla. 177, 218 Pac. 518; Commerce Furniture & Undertaking Co. v. White Sewing Mach. Co., 94 Okla. 299, 222 Pac. 516; Loveland v. Austin, 97 Okla. 175, 223 Pac. 394; Gardner Petroleum Co. v. Looper, 105 Okla. 297, 232 Pac. 949.

The law makes no presumption of agency, and the burden of proving agency, including not only the fact of its existence but the nature and extent thereof, rests upon the party who alleges it. Bourland v. Mosier, 98 Okla. 262, 225 Pac. 348; Waken v. Davis, 112 Okla. 23, 239 Pac. 659; Whitehorn v. Mosier, 119 Okla. 155, 245 Pac. 553; Pierce Oil Corp. v. Myers, 117 Okla. 161, 245 Pac. 863.

There was a total failure on the part of the defendants to conform to this rule. There was no testimony that in any way tended to prove that the plaintiff ever at any time, either specially or impliedly, authorized the payment of any money to the Conservative Loan Company or the Conservative Loan & Trust Company.

The defendants failed to prove agency, and having failed at their proof, the court erred in submitting that issue to a jury.

As was said in Gardner Petroleum Co. v. Looper, supra:

"Notwithstanding this court will not disturb a judgment rendered upon a verdict of a jury where there is any competent testimony reasonably tending to support the same, nevertheless, where there is a total lack of material, competent testimony to support such verdict, it is the duty of the court to sustain a demurrer to the plaintiff's evidence, timely interposed, and failure to do so is such error as will be corrected by this court by a reversal of such judgment"

—and in Winnebago State Bank v. Hall et al., 127 Okla. 215, 260 Pac. 497:

"Where, in the trial of the cause, plaintiff makes out a prima facie case, and the only defense thereto depends upon the existence of a relation of principal and agent, and there is no competent evidence tending to prove such relation, it is error for the trial court to refuse to instruct the jury to return a verdict for plaintiff when properly requested so to do"

—and in Bale v. Wright et al., 120 Okla. 174, 252 Pac. 56:

"Proof that one purported to act as the agent of another is not sufficient evidence upon which to submit the question of agency to the jury."

The evidence in this case shows that Low and his wife, by written agreement, appointed the Conservative Loan Company their agent to procure for them a loan on their farm and authorized that company to collect the interest and principal from them or anyone to whom they, might sell the security and remit the same to the owner of the mortgage. At the same time and pursuant to this arrangement they executed and delivered to their agent the note involved in this action with interest coupons attached and the mortgage herein sued on.

All of those instruments constitute one contract. Chas. E. Knox Oil Co. v. McKee et al., 101 Okla. 56, 223 Pac. 880. The note and mortgage never at any time belonged to the Conservative Loan Company. That company was a mere agent for the purpose of selling the same and procuring for the mortgagors the proceeds thereof.

The evidence further shows that the Conservative Loan Company sent this note and mortgage with the assignment thereof to George M. Christner & Company under date of April 27, 1915, and that on May 1, 1915, George M. Christner & Company sold and delivered this note, mortgage. and assignment to Jennie A. Clark for $500.

There is nothing in the record to show that Jennie A. Clark ever at any time had any transaction or dealing with the Conservative Loan Company, and in so far as this record shows, her dealing with the note and mortgage involved in this action was exclusively with George M. Christner & Company.

The evidence further shows that George M. Christner was the president of the Conservative Loan Company and that George M. Christner & Company was owned by the Conservative Loan Company and was a mere brokerage office for the convenience of the Conservative Loan Company.

There is nothing in the record to indicate that Jennie A. Clark knew anything of the relationship existing between George M. Christner & Company and the Conseravtive Loan Company or the Conservative Loan & Trust Company.

The record further shows that the Conservative Loan Company during its existence, and the Conservative Loan & Trust Company after it had taken over the former company, forwarded the interest payments on this note to George M. Christner & Company, and there is nothing in the record to show that either the Conservative Loan Company or the Conservative Loan & Trust Company ever at any time sent any interest payments to Jennie A. Clark.

The defendants contend that Jennie A. Clark sent the mortgage assignment to the Conservative Loan Company to have it recorded and that that constituted an agency. If this was so, we do not think it constitutes an agency to collect interest or principal, but there is nothing in the record to warrant this assertion. The record shows that George M. Christner & Company sent this assignment to the Conservative Loan Company for record, and there is nothing in the record to show that Jennie A. Clark ever authorized the Conservative Loan Company to have the assignment recorded.

In their brief the defendants say:

"It seems that the first time that the plaintiff in this case wrote to anyone about this loan or mentioned this loan to anyone was on January 18, 1924, when he addressed a letter to the receivers about the payment alleged to be due November 1, 1923 (118)."

The letter quoted from was after the failure of the Conservative Loan & Trust Company and in 1924. Defendants claim to have paid this loan off sometime about 1917. This letter would have no bearing on the contention of an agency alleged to have existed at the time of the payment by defendants of this note.

The question of agency in this case is limited to the condition existing at the time of that payment. Defendants bought the land on the 22nd day of April. 1916, with knowledge of this mortgage. Only one interest payment could have been made prior to that time, which was the payment due November 1, 1915. There is nothing in the record to indicate that defendants knew anything about who made this payment or how, when, or where it was made. Defendants say they paid one interest payment which must have been the interest payment due November 1, 1916, and thereafter paid the note and interest. There was then, in so far as defendants are concerned, the payment of only one interest coupon prior to the time the defendants paid the note. There is nothing in the record to indicate that the defendants received the interest coupon that they paid. The burden of establishing this alleged agency is on the defendants. If they sought to establish an agency by ostensible authority through the collection of interest, they should have shown that when they paid the interest they received the coupon. There is nothing in this record to show that they received any coupon.

The record shows that these defendants paid this note before maturity, without any knowledge as to where the note was payable, to the payee in the note as shown by the record, without any inquiry as to who owned the note and without the note being exhibited to them, having paid a prior interest coupon without receiving the coupon and without any idea of making the payment to an agent, but with the idea that the payment was being made to the owner of the note.

Such testimony refutes the contention of agency made by the pleadings.

Payment of the note was not binding upon the plaintiff unless the Conservative Loan Company was expressly or impliedly authorized by the plaintiff to receive the payment. Weyl v. Smith et al., 122 Okla. 216, 253 Pac. 982. The plaintiff under no circumstances would be bound by any apparent authority of the Conservative Loan Company unless the defendants in making the payment acted and relied on that belief in making the payment. This record shows that the defendants did not act or rely on any information other than that obtained from the examination of the county records, and that they made the payment to the Conservative Loan Company because the Conservative Loan Company had made the loan.

Instruction No. 1 was as follows:

"You are instructed that in law these notes are negotiable instruments and if they were sold to the plaintiff before they were due, without any notice of any defects in the note, then in law that would be known as innocent purchasers and the defense of payment could not be pleaded against the plaintiff, unless you find from the evidence that the plaintiff permitted the Conservative Loan & Trust Company to collect interest on these interest coupons. If you find that Miss Clark or her administrator permitted the loan and trust company to collect interest and she accepted the interest after it was paid to the Conservative Loan Company and held out to the defendant that the Conservative Loan Company had the right to collect the interest and thereby misled the defendants and caused them to pay the Conservative Loan Company, then you are instructed that such a condition of affairs would constitute the Conservative Loan Company the agent of Miss Clark and her administrator."

This instruction was clearly erroneous, as it submits to the jury issues not made by the testimony in the case. There was no testimony that the plaintiff permitted the Conservative Loan & Trust Company to collect interest or that the defendants were misled. The defendants testified directly to the contrary.

There was no question of innocent purchaser. This record shows that Jennie A. Clark purchased this note and mortgage from the agent of the makers of the note. Defendants contend that, inasmuch as the Conservative Loan Company never paid the mortgagors anything, the Conservative Loan Company had no title to the note. There is nothing to that contention, for the Conservative Loan Company did not owe the mortgagors anything until it sold the note and received the money. When it sold the note to Jennie A. Clark, it then became liable to the mortgagors, but the title of Jennie A. Clark to the note vested before the Conservative Loan Company owed the mortgagors anything. The court was in error in submitting the question of innocent purchaser to the jury.

There was no testimony that either the plaintiff or Jennie A. Clark ever permitted the Conservative Loan Company to collect interest, and there was error in submitting that portion of the instruction. The record shows that the Conservative Loan Company paid the interest to George M. Christner & Company. It was error for the court to instruct the jury as to Jennie A. Clark having accepted interest after it was paid to the Conservative Loan Company. We think that was error of the highest type. By that instruction she was denied the right to accept interest from her broker at Bridgeport, Conn., because the defendants had paid that interest to the Conservative Loan Company at Shawnee. There is nothing in this record to show that either the plaintiff or Jennie A. Clark ever held out to the defendants or anyone else that the Conservative Loan Company had the right to collect the interest.

Instruction No. 2 was as follows:

"Gentlemen of the jury, you are instructed that if payment is proved by the defendants, the burden shifts to the plaintiff to show that they are innocent purchasers without notice and that the Conservative Loan Company was not their agent to receive these payments"

—and was erroneous. In defense of this instruction the defendants say that it was harmless. We cannot see how a more harmful instruction could have been given. Under the testimony defendants had paid this money to somebody. This instruction put the burden upon the plaintiff of proving that

the Conservative Loan Company was not their agent. That is not the law. The burden was upon the defendants to prove agency. With this instruction it is easy to understand why the jury returned a verdict for the defendants.

In their brief defendants say:

"In other words, it appears to these defendants that the plaintiff was in the trial court and is in this court without any substantial testimony to the effect that the Conservative Loan Company was not the agent of Jennie A. Clark in her lifetime."

It was not necessary for the plaintiff to prove that the Conservative Loan Company was not the agent of Jennie A. Clark. Defendants follow this statement in their brief with the following:

"Looking at the testimony, however, from the standpoint of the defendants, while there may be no direct testimony that the Conservative Loan Company was the agent of Jennie A. Clark, yet we contend that direct evidence is not necessary and that agency may be determined from all the circumstances of the case and that the proof of this point need not be direct. This was the holding in this court in the case of Mid and Savings & Loan Co. v. Sutton, 30 Okla. 448, 120 Pac. 1007."

We admit the correctness of this statement, but the defendants fail to show any circumstances from which the court or jury might determine that either the Conservative Loan Company or the Conservative Loan & Trust Company was the agent of Jennie A. Clark.

This is a typical Conservative Loan Company case, of which there have been many in this court. Here, as usual, there was fraud on the part of the officers of that company. However, in this case two persons were defrauded; the borrower in that he did not get anything for his note and mortgage, and the defendants in that their payment of the note was not forwarded to the owner of the note.

An examination of all of "Conservative" cases decided by this court discloses that the one nearest in point in all particulars is that of Monroe et al. v. Kitterer, 127 Okla. 212, 260 Pac. 479. In that case there was a letter, after the failure, similar to the letter in this case. There a local agent of the company sold the note to the investor and handled the collection of interest for the investor and handled the collection of the investor. The material distinction was that there the assignment of the mortgage was of record. The court said:

"The evidence shows that the money was paid by the defendants to the Trust Company, and the company in turn sent it to its loan agent at Burlington, who in turn notified the plaintiff, whereupon the plaintiff took the coupons to the office of the local agent, received the payment from him, canceled the coupons, turned them over to him, and he sent them to the Trust Company. The coupons were never turned over to Bushman, the local agent, for collection.

"Under this state of record we think the court was correct in holding that the testimony did not raise an issue of fact on the question of agency to be submitted to the jury."

The effect of a failure to record an assignment of a mortgage is discussed at length in Chase v. Commerce Trust Company et al., supra. Under the facts and circumstances shown by the evidence in this case the defendants were not prejudiced by the failure to record this assignment. One of the defendants testified that he examined the record and found the mortgage and knew of it at the time they purchased the land. About the year 1917, they made this payment at Shawnee. They were promised a release of the mortgage. They never received that release. The Conservative Loan Company continued to operate until July 13, 1923. In all that time these defendants never paid any further attention to the procuring of a release of the mortgage they had paid. It is highly probable that during all that time they could have forced the Conservative Loan Company to give them a release or return the money.

They now contend that section 5251, C. O. S. 1921, governs in this case. That would be true, if the defendants had paid off the mortgage at the time they purchased the real estate, and as a part of the same transaction, but in this instance they took the title of the real estate with knowledge of the mortgage. The recording statute does not apply. This is clearly pointed out in Shawnee State Bank v. Hoge, 131 Okla. 9, 267 Pac. 481.

These defendants are charged with knowledge of the statutes of this state. They had purchased this land with knowledge of this mortgage. They sought to pay the note. They did not know where it was payable, but assumed that it was payable at the office of the mortgagee. They went there and offered to pay the note and paid it without a delivery of the note. In this they were negligent. They could not have been compelled to pay it without a delivery

**8**

of the note. Section 7744, C. O. S. 1921, provides:

"The instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it."

Section 7740, C. O. S. 1921, provides:

"* * * If the instrument is, by its terms, payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part. * * *"

These two sections afford complete relief if taken advantage of. When they are ignored and a payor is injured, he has no one to blame but himself.

From the language of the defendants in their brief the only issue in this case is the question of agency of the Conservative Loan Company.

There was no competent evidence of agency. The court erred in submitting the case to the jury. The plaintiff made out a case, and is entitled to judgment, and the cause is reversed and remanded to the district court, with directions to enter judgment for the plaintiff for the amount of the note with interest and for foreclosure of the mortgage.

LESTER, V. C. J., and HUNT, HEFNER, CULLISON, and SWINDALL, JJ., concur

MASON, C. J., and CLARK and RILEY, JJ., absent.