## R-F FINANCE CORPORATION v. SUMMERS.

No. 22274.   May 1, 1934.

J. L. Vertrees and Anderson & Anderson, for plaintiff in error.

Guy Green, for defendant in error.

PER CURIAM. The parties will be referred to as they appeared in the trial court,—the plaintiff in error being the plaintiff therein and the defendant in error being the defendant.

The facts are as follows: In 1929 the Waurika Motor Company was the Ford agency dealer at Waurika, and on the 7th day of October sold one R. H. Wright a certain Ford car, taking a chattel mortgage thereon for a balance of $420 payable at $35 per month. This mortgage was filed for record in Jefferson county, October 29, 1929. After their execution the note and the mortgage were by the company assigned to the plaintiff for value, it being a dealer in commercial paper and engaged in financing installment sales of automobiles, with its office at Wichita Falls, Tex. Thereafter, Wright paid to the plaintiff direct four payments of $35 each and one to the company, as they became due, which remitted the one to the plaintiff.

In February, 1930, Wright brought the car back and turned it over to Jackson, manager of the motor company, who sold it to

the defendant. No further payments on the car were made, and on April 22, 1930, plaintiff filed this action to obtain possession thereof under the mortgage from Wright to the motor company and assigned by it to the plaintiff, claiming a breach and balance due thereon of $245, interest and attorney's fees. The defendant gave a redelivery bond and retained possession pending the litigation.

The defendant's answer denied generally the allegations of the plaintiff's petition, and further alleged that, by a course of conduct set out therein, the plaintiff had held the motor company out to the public as its agent with full authority to accept cars returned or repossessed in settlement of amounts due against the same; that the car in question was such a repossessed car and had been by the company as agent of the plaintiff accepted in full settlement of what was unpaid upon its purchase price, and said balance was thereby paid and satisfied, and that the defendant purchased the automobile from the company for a valuable consideration when it was in possession of the company and on display as a part of its general stock, and that he had no notice or knowledge of any mortgage of the plaintiff thereon.

At the conclusion of the defendant's testimony, the plaintiff demurred to the sufficiency thereof, and moved the court for a directed verdict against the defendant, both of which were overruled and plaintiff excepted. The jury returned a general verdict in favor of the defendant, and judgment was rendered against plaintiff for costs. Its motion for a new trial was overruled and exception reserved, and the case is here for review.

Numerous errors are assigned by the plaintiff, but, after a careful consideration of the entire record and the facts and circumstances disclosed by the evidence, it is not necessary to consider more than the following: (1) That the trial court erred in overruling plaintiff's motion for a new trial; (4) erred in overruling plaintiff's demurrer to defendant's evidence; (5) erred in overruling plaintiff's motion for a directed verdict. Each of these assignments challenges the sufficiency of the evidence offered on behalf of the defendant, and if well taken renders unnecessary the consideration of other alleged errors.

Upon the trial the plaintiff introduced in chief the replevin affidavit, bond, writ, and return of writ, and agreement as to making redelivery bond; the original chattel mortgage given by R. H. Wright to the motor company and assignment thereof to the plaintiff, and proof of its due filing of record. Proof of loss of original note having been made, a copy of the same was introduced. The manager of plaintiff's collection department testified there was a balance of $245 and interest due on the car, identified the car covered by the mortgage as being the one replevined, and valued it at about $400. He also testified to a demand being made upon defendant for the car prior to the filing of the suit, and his refusal to yield possession of it to the plaintiff. Other papers relating to the contract of purchase were introduced as well as the original ledger sheet showing the R. H. Wright account and the payments made by him; and the plaintiff rested.

Proof of the foregoing matters having been made by the plaintiff, a prima facie case on its behalf was established, and unless the defendant presented sufficient evidence to show that the note and mortgage did not constitute a valid and subsisting debt and lien in favor of the plaintiff at the time he bought the car from the motor company, the plaintiff was entitled to judgment. The burden was upon him to establish his defense by a preponderance of the evidence. In order to meet this burden he introduced various and sundry witnesses and testimony, seeking to show that the relation of principal and agent between the plaintiff and the motor company existed at the time he purchased the car from the latter.

The defendant introduced in evidence a written contract between the plaintiff and the motor company dated September 4, 1929, from which it appears that the plaintiff was engaged in handling automobile commercial paper for motor dealers selling on deferred installment payments; and the plaintiff agreed it would handle such paper of the motor company, setting out somewhat in detail the conditions and terms of the agreement and the parts to be performed by the parties thereto. The only part thereof which is claimed by the defendant to be pertinent to the question of agency in this case, is the following:

"We" (the motor company) "agree that if you" (the plaintiff) "are obliged to repossess any of such motor vehicles for nonpayment of any note or notes * * * that we will assist you in every possible way to obtain possession of said motor vehicles, and we will purchase such motor vehicles from you at our place of business for the amount of the unpaid balance due on the note or notes held by you."

Evidence was introduced tending to show that the motor company did give plaintiff information as to delinquents and the probable whereabouts of cars upon which installments became delinquent; but no testimony showed that the motor company at any time ever repossessed any car as agent for the plaintiff, or purchased from the plaintiff any car which had been repossessed by the plaintiff; and that is especially true of the Wright car, which is the subject-matter of this suit. No testimony showed that such clause was applied or was applicable to that car.

As to the transaction with Mr. Wright, the evidence shows it was handled in the regular and usual manner. It was sold to him for another car and $420, payable $35 monthly. Wright gave his note and chattel mortgage securing it, and signed a "Purchaser's Warranties," as was the customary practice. The note and mortgage were assigned to plaintiff by the motor company, the mortgage was duly recorded along with the assignment, and he was sent a coupon book and letter of instructions from the office at Wichita Falls, among other things, telling him to pay only the plaintiff and only at its office in Wichita Falls. He so made four payments. Then he traded with Jackson for another car, who told him he "would take care" of the indebtedness and get the papers for him from the plaintiff. The car was not returned in payment of his debt to plaintiff. This was just a personal deal between him and Jackson. Nobody testifies the plaintiff knew anything about it. He did not pay the installment to plaintiff and was by it notified of his delinquency. Then instead of taking the matter up with the plaintiff, he saw Jackson about it, who said "he would take care of it." He did not pay any more and the plaintiff notified him again; and again Wright went to Jackson about the matter, who said he had just neglected it and "would see after it." He turned all his papers over to Jackson, and did not write or see plaintiff about the matter. After he had made four payments, and some four or five days before the next payment became due, he had turned the car to Jackson. Jackson died within the next month, and he again received notice from the plaintiff as to his delinquency for that month. Before that became due, the car had been sold to the defendant who paid the full purchase price thereof to Jackson. The chattel mortgage was on file there in Waurika, but the defendant testifies he did not investigate whether any was of record against the car, but knew Jackson had sold the Wright car first to one Jimmy Culler and knew it was a used car.

Some 26 checks signed "Waurika Motor Company by S. Jackson," and payable to the plaintiff for varying sums totaling $1,533.55, issued between October, 1929, and April, 1930, were introduced by the defendant. Upon each of these is noted the name of the persons to be credited with the amounts thus remitted, being persons whose notes had been assigned to plaintiff by the motor company. No evidence as to the circumstances under which any of these sums had been entrusted to the motor company is in the record.

There is in the record no statement, conversation, or conduct on the part of Jackson, or of any one connected with the plaintiff corporation, indicating that the relationship of principal and agent existed between them for any purpose. On the contrary, Mr. England, the plaintiff's financial officer, testified that from 75 per cent. to 90 per cent. of the notes handled by his company were paid by the makers thereof directly to the plaintiff; that the plaintiff did not direct the motor company, or Jackson, its manager and owner, to repossess the car from Mr. Wright, although he could not say as to other cars.

Mr. Van Bebber, who had been a salesman for Jackson and the motor company, could not testify as to any instance of a car being turned over to Jackson for the plaintiff, nor of any collection being made by it as agent for the plaintiff, nor of any understanding or agreement between them that Jackson should be plaintiff's agent in making collections. He testified that some people who owed on cars came in and paid the money to Jackson, who forwarded it to plaintiff, but did not know for whom he was acting in so doing.

The notes were at all times in the possession of the plaintiff at Wichita Falls. Under all the evidence, facts, and circumstances shown on behalf of the defendant, there is a complete failure to establish that the motor company was at any time or to any extent or in any manner the agent of the plaintiff for any purpose in the particulars asserted by defendant.

"Agency is never presumed, but is a question of fact to be proved, and the burden of proving agency, including not only the fact of its existence, but the nature and extent thereof, rests upon the party alleging it." Whitney v. Low, 137 Okla. 1, 278 P. 1096.

"Agency is a fact to be proved as any other fact, and if any presumption of agency is indulged, it must be indulged from the facts and circumstances of the case." 2 Corpus Juris, sec. 647; Wrought Iron Range Co. v. Leach, 32 Okla. 706, 128 P. 419; Gore v. Canada L. Assur. Co. (Mich.) 77 N. W. 650.

"The law itself makes no presumption of agency, and the burden of proving agency, including not only the fact of its existence, but its nature and extent, rests ordinarily upon the party who alleges it." Pierce Oil Corporation v. Myers, 117 Okla. 161, 245 P. 863.

"Agency will not be presumed, but the burden is upon him who asserts agency to establish it by competent evidence the same as any other fact." Weiser v. Doerksen, 136 Okla. 57, 276 P. 225.

Not only, therefore, must the defendant in this case establish the fact of agency between the plaintiff and the Waurika Motor Company, but the rules of evidence by which it must be established must likewise be observed in accomplishing that result. In Winnebago State Bank v. Hall, 127 Okla. 215, 260 P. 497, this court said:

"Evidence of statements, declarations, and acts of a reputed agent, standing alone, are not admissible in evidence to establish the relation of principal and agent." Citing Ramsey, Adm'r, v. Thompson, 127 Okla. 257, 260 P. 773, and authorities there cited.

"Neither the declarations nor acts of another can be given in evidence to prove that he is the agent of another." Pierce Oil Corporation v. Myers, 117 Okla. 161, 245 P. 504, supra.

In the case of Brown v. Howard, 139 Okla. 202, 281 P. 792, this court said:

"The payment of a negotiable promissory note, before maturity by the mortgagor or his grantee, when made to the mortgagee not in possession of the notes and mortgage, is not binding upon the assignee thereof, who has possession of the notes and mortgage at the time of payment, unless he expressly or impliedly authorized such payment." Citing, with approval, Bale v. Wright, 120 Okla. 174, 252 P. 56; Frank v. Cannavan, 127 Okla. 152, 260 P. 47; Chase v. Commerce Trust Co., 101 Okla. 182, 224 P. 148; and citing Ramsay v. Thompson, 127 Okla. 257, 260 P. 773, the court said: "The rule is of equal force when applied to part payments of a promissory note."

As has already been seen, the contract between the plaintiff and the motor company contains no provision that the latter will collect any payments coming due on the notes. It does provide that if it becomes necessary to repossess any cars on which payments become delinquent, the motor company will assist in repossessing such cars and will repurchase them from the plaintiff. Not only so, but Wright, the maker of the note, himself was notified to make payments to the plaintiff at its Wichita Falls office only, and his testimony shows he received such notice. Further, the contract relates to repossessing only such cars as those upon which payments were delinquent, and the undisputed testimony of Wright, testifying for the defendant, is that he returned the car to the motor company several days before his note became delinquent, and that the latter agreed to make it all right with the finance company and to get his note for him. So the contract did not apply at all to this car. Nor did he return the car in settlement of his debt to plaintiff.

The entire defense rests upon the contention that in taking back the car from Wright, the motor company was acting as the agent of the finance company, and that as such agent the car was accepted by the motor company in full payment of Wright's debt to the finance company. Attempt is made to establish such agency by proof of acts done by the motor company and by Jackson, its manager, in connection with other notes and mortgages it had assigned to the plaintiff, and it is shown that numerous payments on such notes were made to the motor company and by it remitted to the plaintiff. The circumstances attending such payments are not in evidence, nor any conduct, statements, or conversations of the parties connected therewith at the time they were made. The mere fact of such payments being made is not sufficient to establish such agency. It would have a tendency to prove Jackson the agent of the payors for making their remittances to plaintiff. But even if such agency were established as to authority to receive payments for the finance company, that would not also establish authority of the motor company to receive an automobile in satisfaction of the notes held by the finance company; nor authorize it to receive cars in satisfaction of balances to come due afterwards from purchasers where at the time all due payments had been made and nothing more would became due till in the future. The contract as to assisting in repossessing cars covered only cases where payments were delinquent. It is evident that Wright, in returning the car and seeking the cancellation of his note and mortgages, was only getting a favor from Jackson. When later notified of a subsequent delin-

quency, he did not go to the finance company, but to Mr. Jackson, and did not even notify the finance company of the matter. If Jackson took advantage of the transaction to his own profit, it was not the fault of the plaintiff and cannot be charged against the plaintiff.

Inasmuch as the evidence failed to establish the fact of relation of principal and agent between the plaintiff and the finance company, or that the things done by the latter were within the scope of any agency existing, when the plaintiff lodged his demurrer to defendant's evidence and moved for a directed verdict in its favor, the trial court erred in overruling such demurrer and in denying its request for a directed verdict.

In Whitney v. Low, 137 Okla. 1, 278 P. 1096, the court says:

"Where, in the trial of a cause, plaintiff makes out a prima facie case, and the only defense thereto depends upon the existence of a relation of principal and agent, and there is no competent evidence tending to prove such relation, it is error for the trial court to refuse a verdict for plaintiff when properly requested so to do."

"In law actions, * * * where the evidence fails to show agency, and no circumstances are shown from which agency could reasonably be inferred, there is no question for a jury to determine, and a demurrer challenging the proof of the plaintiff on the question of agency, under such circumstances, is properly sustained by the court." Lewis B. Wood Realty Co., Inc., v. Greer, 100 Okla. 276, 229 P. 232.

The defendant's own testimony clearly indicates only a personal transaction with Jackson and the motor company rather than with the plaintiff through a purported agent, and indicates no reliance upon any course of conduct of plaintiff, or other circumstances, by which he was misled to his injury. His entire testimony is as follows:

"Q. Your name is Carl Summers? A. Yes, sir. Q. Plaintiff in this case? (Evidently the defendant.) A. Yes, sir. Q. Where have you lived the last number of years? A. Waurika. Q. Did you buy a car from the Waurika Motor Company? A. This year, in March. Q. From whom did you buy it? A. Mr. Jackson. Q. What kind of a car was it? A. Ford Tudor sedan. Q. What was the condition of the car, used or otherwise? A. Used car. Q. How much used? A. Well, I don't know; it had been sold and run quite a while and taken back. Q. At the time you bought that car, did you have any knowledge that a man named R. H. Wright ever put a mortgage on it? A. No, sir. Q. Never

heard of any? A. No, sir, never heard of any. Q. You paid for the car, that is, arranged for it? A. Yes, sir. Q. Where was the car when you bought it? A. Down at the Waurika Motor Company. Q. Part of the stock down there? A. Yes, sir. That's all."

Cross-examination by Mr. Vertrees:

"Q. It was just in there with the other cars, wasn't it? A. Yes, sir. Q. Mr. Summers, you say you knew at the time you purchased this car it was a used car? A. Yes, sir. Q. Didn't you ask Mr. Jackson who he had sold it to the first time? A. No, sir, I knew who he had sold it to. Q. I thought you said you didn't. A. I didn't know about Mr. Wright; he had sold it to Jimmy Culler. Q. You didn't inquire whether there was a mortgage on that car or not? A. No, sir. Q. You didn't go to the records to look to see? A. No, sir."

His own testimony tells the whole story of the infirmities of his defense, and needs no further comment here.

The defendant's answer challenged the recording of the chattel mortgage, but the evidence shows that it was duly filed of record, together with the assignment thereof, at the proper place and at the same city where the transactions all occurred. His own evidence shows he did not inquire whether there was a mortgage on the car, and did not go to the records to look to see. Being of record, the mortgage was notice to every one; and he cannot be heard to say now that he had no notice or knowledge of its existence and content.

"After due filing of a chattel mortgage in the recording office, as provided by law, third parties are charged with notice of the contents thereof to the same extent as if they had actual notice," in view of C. O. S. 1921, section 7651. U. S. Zinc Co. v. Colburn, 124 Okla. 249, 255 P. 688.

"The filing of a chattel mortgage in compliance with the recording statute imparts, not only notice of the act of filing, but of the contents of the mortgage, and third parties are charged with notice of the contents thereof to the same extent as if they had actual notice." In re Kramer Mercantile Co., 21 F. (2d) 616.

"A description in a chattel mortgage which is sufficient to put a third person upon inquiry, and which when pursued will enable him to ascertain the property intended to be included in said mortgage, is good." Phelan et al. v. Stockyards Bank et al., 134 Okla 13, 276 P. 175; Smith v. LaFayette & Bro., 29 Okla. 671 119 P. 979; Aikins v. Huff, 133 Okla. 268, 272 P. 1025.

The filing of a chattel mortgage under

sections 7650 and 7651, C. O. S. 1921, is to give constructive notice thereof.

"It is a well-settled principle of law that notice is the equivalent of knowledge, and may be divided into two classes, constructive and actual. Constructive notice is that imparted by the record, and is a matter of statute. Actual notice exists when knowledge is actually brought home to the party to be affected thereby. It also includes implied notice, which is notice to the authorized agent of the party sought to be bound by the notice. The filing of a chattel mortgage for record, and the recording thereof, are but constructive notice of its existence." Strahorn-Hutton-Evans Commission Co. v. Florer, 7 Okla. 499, 54 P. 710.

It is, of course, a matter of regret that any innocent person should suffer loss by reason of the misconduct of another. But, as between two innocent people, one of whom had the means at hand to have protected himself but did not, the law favors the one who is without fault. The defendant by inquiry could have protected himself from the consequences of his own negligence, but did not, and cannot be heard to say that he had no knowledge or notice of plaintiff's mortgage which was of record and readily accessible for inspection by all who cared to see it.

It is not necessary to extend this opinion further, nor to examine other assignments of error herein. Some of the instructions were manifestly erroneous, based as they were upon a state of facts not in evidence. But the conclusion reached as to the chief contention in the case renders an extended consideration of these matters unnecessary.

There was no competent evidence of agency. The defendant [had constructive notice of the plaintiff's chattel mortgage. The court erred in overruling the plaintiff's demurrer to defendant's evidence, in denying the plaintiff's motion for a directed verdict in its favor, in submitting the case to the jury, and in overruling plaintiff's motion for a new trial. The plaintiff made out its case and is entitled to judgment. The case is reversed and remanded to the district court, with directions to enter judgment for the plaintiff for the possession of the automobile involved, or for its value at the time the replevin writ was served, in case delivery of the property cannot be had, and for such other proceedings as may be in consonance with this opinion.

The Supreme Court acknowledges the aid of District Judge Freeman E. Miller, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.