## FEDERAL INTERMEDIATE CREDIT BANK v. SHANE et al.

No. 19170.   Opinion Filed March 17, 1931.

Rehearing Denied May 12, 1931.

Murray A. Holcomb and C. C. Davidson, for plaintiff in error.

O. C. Wybrant, A. W. Walker, and B. F. Willrtt, for defendants in error.

KORNEGAY, J. This is a proceeding in error brought to this court from the district court of Harper county, Honorable F. Hiner Dale, judge, to review the action of the district court, and to set aside its judgment in a case wherein the plaintiff in error was the plaintiff and the defendants in error were defendants. The case-made contains 658 pages of typewritten matter. The original brief of the plaintiff in error contains 170 pages. The brief of the defendant in error contains 75 pages, and the reply brief of the plaintiff in error contains 41 pages.

We have examined this record in detail. The case comes here after the verdict of a jury finding the issues in favor of the defendant in error Shane. The journal entry of judgment is shown on page 641 of the case-made. The motion for new trial can be found on page 645, and there are 26 reasons assigned in the motion for a new trial. The order overruling the motion for a new trial was made on September 10, 1927, followed by case-made, and filed in this court on March 1, 1928.

This was an action upon a promissory note of the defendant which with its indorsements is as follows:

"$800.00   No. 2262   Buffalo, Okla. April 16, 1924   No. 163   $800.00

"January 16, 1925 after date, for value received, I, we, or either of us promise to pay to the order of

"The First National Loan Co., Buffalo, Oklahoma

_____Eight-Hundred and No/100_____Dollars payable to First National Loan Company, Buffalo, Oklahoma, with interest at the rate of 7 per cent. per annum from Mty.

"All principal and interest not paid when due shall bear interest at the rate of 7 per cent. per annum, and the several makers, sureties and endorsers hereby waive presentment for payment, notice of extension, non-payment, and protest, and agree that any extension of time made, thereon, or renewal hereof, shall not affect their liability, whether they have notice of such extension or renewal or not.

Due 1-16-25

| Secured by | Ext. to. |
| --- | --- |
| 10 Cattle | Ext. to. |
| 8 Horses | Ext. to. |
| 4 Mules | Ext. to. |
| 31 Hogs | Ext. to. |

### Notified.

"It is further expressly agreed that if this note after maturity is placed in the hands of any attorney or collector for collection, whether suit is brought on same or not, then and in that event to pay the owner or holder of this note $10.00 and ten per cent. additional of the principal and interest thereon as attorney's fees for collection.

"(Signed) L. E. Shane.

"Indorsements:

"First National Loan Co., Buffalo, Okla.

"By (Signed) E. B. Brink, Secy.-Treas.

"Revenue Stamps 16c

"—Cancelled—"

It was on May 16, 1924, for value sold and delivered to plaintiff in error, and from that time was held by the plaintiff in error and was never in possession of either of defendants in error or E. B. Brink, the secretary-treasurer of defendant loan company.

The pleadings are voluminous. The amended petition on which the case was tried was filed on the 22nd of September, 1926. The First National Loan Company filed a separate answer on January 26, 1926. L. E. Shane filed a separate answer on June 9, 1926. The answer of the loan company averred that it acquired the note from the maker and that it rediscounted and transferred it along with a great many others to the plaintiff.

It further stated that after it was chartered until the month of December, 1924, all the transactions had by the plaintiff relative to notes and securities rediscounted by the defendant to the plaintiff were had through it, and that it at all times looked after the collections of interest and the collection of principal on notes, as the same became due and payable, and upon payment of notes would remit the proceeds thereof to the plaintiff.

It further stated that about the 20th of June, 1924, L. E. Shane, the maker, paid the entire sum then due on said note to it, and that thereafter in the month of December, 1924, it deposited the money with the First National Bank of Buffalo, Okla., and that about the 23rd of December, 1924, the First National Bank of Buffalo became insolvent, and that the loan company lost the money it had on deposit in the bank, including the sum received from L. E. Shane. It claimed that the note had been paid, or should have been paid.

It further set up the fact that it did not have any property except the $19,000 that had been deposited to secure all of its rediscounts. It further states that it believed, and charged the fact to be, that long prior to the beginning of the action the plaintiff herein had charged the note, declared upon in this suit, against the cash on hands belonging to said defendant.

It further stated that even though the plaintiff had not so charged the fund, it had a full right so to do. It will be observed that this answer nowhere sets out the amount of its rediscounts with the plaintiff bank. It asks that the plaintiff be required to charge the note sued on to its deposit.

The defendant Shane answered with a general denial, saying what he admits to be true. He admitted signing the note, but claimed that it was not bought from the loan company, and claimed that it was a note made direct to the Federal Intermediate Credit Bank, and that this bank was authorized under the law of the United States as a corporation for the purpose of purchasing and handling by discount, the notes and securities executed by persons engaged in agricultural pursuits, but that it had no power to make loans direct to persons engaged in agricultural pursuits.

It further averred that it was necessary to create an intermediatory agency between the Intermediate Bank and defendant and others likewise situated, and that for that purpose the First National Loan Company of Buffalo was organized as a corporation under the laws of the state of Oklahoma, with its place of business at Buffalo, Okla.

It further averred that the defendant and a large number of other farmers residing in the vicinity of Buffalo, Harper county, Okla., desired to secure financial aid and assistance under the Federal Farm Loan Act, and that the plaintiff **directed, advised, required, and dictated** to the defendant and his associates, who were desirous of securing the aid, the manner by which loans could be secured, and that the plaintiff required the formation of a local corporation to be known as the First National Loan Company, with its office at Buffalo, in Harper county, and that the plaintiff advised the loan company as to the plans and methods of organization and incorporation, and went so far as to furnish the loan company with a form for its charter and resolutions, to be adopted by the loan company, and the forms of ap-

plications to be filled out by the prospective borrowers, and also forms of records, minutes, resolutions, and other corporate acts necessary to be used in the furtherance of said plans "whereby this defendant and his said associates might obtain money upon securities under the said Federal Farm Loan Act."

There was a further allegation that the plaintiff advised, aided, and assisted and required the loan company to conduct all of its business under the direction, control, aid, and assistance of the plaintiff, and required the loan company to submit to it 'all prospective loans solicited by this defendant and his associates in its application and efforts to secure money upon securities, under the provisions of said Federal Farm Loan Act," and "in pursuance thereof and at the directions of the plaintiff, the note, after its execution by the defendant and before any consideration of any value passed to him, was transmitted to the office of the plaintiff at Wichita, Kan., for inspection and approval as to the form, contents, terms, and conditions of said note."

It was further alleged that a chattel mortgage was made to secure the note, and the mortgage was transmitted to the plaintiff for approval, and the plaintiff through its officers and agents inspected the solvency of this defendant and the chattel security, and upon doing so the plaintiff transmitted to the First National Loan Company $750, with directions to turn over the money to the defendant.

It is further pleaded that in ract the loan was made directly by the plaintiff to the defendant; and that the organization of this loan company, and the execution of the note, was to enable it to comply with the law under which it was organized.

In the seventh paragraph, it is averred that during all the transactions had with the defendant relative to the note, and in all the matters and transactions had between the plaintiff and farmers residing in the vicinity of Buffalo, Okla., conducting like business with the plaintiff, the relationship of principal and agent existed between the plaintiff bank and the First National Loan Company, its agent. In the eighth paragraph it was stated that the note declared upon provided, among other things, that "the same shall be payable to the order of the First National Loan Company at Buffalo, Okla., and that this plaintiff knew before it advanced the consideration for said note to this defendant that said note expressly provided and authorized this defendant to pay said note to the First National Loan Company at its place of business at Buffalo, in Harper county, Okla.

In the ninth paragraph there was a statement, "that at all times from April 16, 1924, the plaintiff permitted the First National Loan Company and its secretary and treasurer, one Earl Brink, also known as E. B. Brink, to transact all of the business connected with the loan of the defendant and connected with other and similar loans made by the associates of the defendant in said enterprise, and that the plaintiff permitted the First National Loan Company, and E. B. Brink, to hold themselves out to the public in general as having full authority to conduct said business connected with said loans and similar loans."

There was a further allegation that the plaintiff knowingly permitted E. B. Brink to release of record chattel mortgages, and that he did as a matter of fact release and discharge of record many of said similar chattel mortgages made for the same purpose as the chattel mortgage of this defendant, and that the said E. B. Brink collected money from the associates of this defendant in said similar enterprise and transmitted the same to this plaintiff on many occasions, and that the conduct of Brink was in all things ratified, confirmed, and adopted by the plaintiff herein, and that the plaintiff permitted said Brink and the loan company to hold themselves out to the public as being fully authorized by this plaintiff to transact business with the same force and effect as though done by the plaintiff herein.

There was a further statement that the defendant believed and was justified in believing that the First National Loan Company and Brink were fully authorized to conduct and handle the business with the same force and effect as though done directly by the plaintiff, and that the defendant relied upon the apparent authority of the said First National Loan Company and the said Brink to transact said business, and to receive payment for said notes, and to release chattel mortgages securing the same, "and that so relying thereon and believing that the said E. B. Brink and the First National Loan Company were authorized to receive payment on said notes and to release chattel mortgages, all of which was justified by the acts and conduct of the plaintiff herein." What the defendant did under that belief is not shown.

The tenth paragraph sets out that the defendant held a public sale at his farm in Harper county, and sold off the chattel

property, and that prior to the sale he secured the consent of Brink and the First National Loan Company to hold this sale, and that immediately following the sale, on or about the 12th day of June, 1924, the defendant turned over and delivered to E. B. Brink and the First National Loan Company, as agents of the plaintiff, all the proceeds of the sale, and in addition thereto a small amount of cash, sufficient to aggregate the total amount of the note, and that E. B. Brink and the First National Loan Company, as agents for the plaintiff, received and accepted the money and that thereby the note is fully paid and discharged, and that this defendant is entitled to the return and cancellation of said note.

The eleventh paragraph sets up the fact that the plaintiff permitted the said E. B. Brink and the First National Loan Company to hold themselves out to the public as the agents of this plaintiff, and that this defendant relied upon the apparent power and agency of the said Earl Brink and the said First National Loan Company and was justified in relying thereon, and fully believed that they were authorized to receive payments upon behalf of this plaintiff, and so relying thereon and believing the same, all of which was justified by the acts and conduct of the plaintiff and the said Earl Brink and the said First National Loan Company, the defendant paid said note at the place designated therein.

There is a further allegation "that the plaintiff at no times had or held any correspondence with the defendant, and the plaintiff knowingly permitted the said E. B. Brink and the First National Loan Company to hold themselves out to the public at large as agents for the plaintiff, and that this defendant is without fault in the premises."

A reply was filed to this. It denied the agency and denied the giving of directions as to forming this corporation known as the First National Loan Company. It denied that the loan was made directly to it, and denied knowledge as to the amount of the property of the loan company, and avers that the capital stock was $16,400.

It averred that the terms of the note were not sufficient to authorize payment to the First National Loan Company; denies the authority of Brink to release the chattel mortgage; denies the payment. It sets up the requirements to get money from the Intermediate Bank under the law. It further sets up that L. E. Shane was himself a stockholder in the loan company, that certificate No. 129 was issued to him on the 23rd

of May, 1924, and that said Shane should have known the authority and agency of the loan company. It pleaded estoppel on Shane by reason of the action of the First National Loan Company. This reply is verified.

There was a reply to the answer of the loan company and it likewise was verified. In this answer plaintiff sets up that it did not require $19,000 as security, but did require $16,400, which was 10 per cent. of the discounts.

It further avers that due to losses this amount had been consumed.

It further denies any operation through the loan company and denies that the loan company was ever its agent in collection on principal, on notes or interest.

It further denies that Shane paid the loan company the amount due on the note. It denies that it was deposited in the First National Bank of Buffalo. It avers the fact to be that Shane sold the property placed in the mortgage, and deposited or caused to be deposited to the account of Brink the money, and that afterwards Brink issued a check to Shane for it, and the money went to the Commerce Trust Company of Kansas City, Mo.

On these issues the parties went to trial, and the trial resulted in a verdict against the Federal Intermediate Credit Bank, and in favor of L. E. Shane. The petition in error makes L. E. Shane and the loan company defendants in error, but there seems to have been nothing done in the court below with reference to disposing of the case against the loan company.

It was not claimed by any of the parties that there was express authority given by the Federal Intermediate Credit Bank to the defendant Shane to make any payment to anyone else than itself, and it was not claimed that it had expressly authorized anyone to receive payments on its behalf.

An effort was made to establish the fact that in other transactions had between the Federal Intermediate Credit Bank and the payors of other notes made payable to the First National Loan Company and sold to plaintiff, the plaintiff bank had held out the First National Loan Company and E. B. Brink as its agents. It consisted in showing the way a large number of the loans were made to the First National Loan Company and their sale to plaintiff, and the correspondence about the loans, their payments, and in several cases their renewal.

We have examined the proof. There is

nothing to show that there was any authority, expressed or implied, given by the plaintiff to said Brink, or the First National Loan Company, to receive money from payors on account of the plaintiff.

The evidence conclusively shows that the defendant Shane executed a chattel mortgage to the First National Loan Company to secure the payment of the promissory note sued on, covering live stock, and that without the knowledge or consent of the plaintiff bank, holder of the note, the said Shane, about the 11th of June, 1924, acting in concert with Brink, had a public sale of the property, and posted sale bills saying that the First National Bank of Buffalo would be the clerk, and that at the sale E. B. Brink acted as clerk, and that the proceeds of the sale were turned over to Brink, who in turn deposited them in the First National Bank of Buffalo, and that shortly afterwards the proceeds were used by the defendant Shane for his own purpose, and to accommodate Brink.

The evidence further conclusively shows that nothing whatever was received by the plaintiff out of the proceeds of the mortgaged property, or from any other source, toward the satisfaction of its debt.

Nothing was shown that would warrant the inference that Brink had authority to collect the money as the agent of the plaintiff. The note was not due, and nothing whatever had been done by the holder towards its collection, and it remained in its possession, and plaintiff knew nothing of the sale of the mortgaged property for several months after the conversion of the property.

There are some cases that have been considered by this court on the subject of collections made by the seller of commercial paper and installments of interest on farm loans, but nothing has been said in any of these out of which the most optimistic debtor could hope to defeat his liability in a case like this.

There is a line of cases that our court has passed on that it might be claimed would affect this matter. Some arose out of the action of loan companies taking long time loans with interest coupons payable at stated intervals, and the note being payable at the office of the company negotiating the loan. Later, as the installments became due, the assignee of the paper would allow the payments to be made to the original payee. In a great many of those cases the notes were assigned without recourse.

There is another line of cases where this principle was attempted to be transplanted to the case of an ordinary discount business between banks. In this class, among other cases, is that of Invader Oil Co. v. Commerce Trust Co., 111 Okla. 85, 238 Pac. 441. The third section of the syllabus is as follows:

"3. Where authorized agency of an insolvent bank is relied on to validate an alleged payment of a note to it, and the evidence relied on to establish such agency is proof of the general course of dealing between the insolvent bank and its alleged principal during a number of years, which proof goes no further than to establish that when the alleged principal forwarded to the alleged agent commercial paper which was about to mature, the agent had full authority to collect, renew, or substitute such paper so sent it, such proof is wholly insufficient to establish authority in the said agent to receive payment of a note which is not so placed in its hands and over which it has no control at the date of the alleged payment. Such defective proof does not raise an issue of fact as to agency to receive such payment and presents no question for determination by the jury."

Another one of the cases is Weyl v. Smith, 122 Okla. 216, 253 Pac. 982, and the second paragraph of the syllabus is as follows:

"2. Payment of a negotiable note, secured by a mortgage by the mortgagor, when made to the mortgagee not in possession of the note and mortgage, is not binding upon the assignee thereof before maturity, who has possession of the papers at the time of payment, unless he had expressly or impliedly authorized such payment."

Another case is the case of Winnebago State Bank v. Hall, 127 Okla. 215, 260 Pac. 497. The first four paragraphs of the syllabus are as follows:

"1. Evidence of statements, declarations, and acts of the reputed agent, standing alone, are not admissible in evidence to establish the relation of principal and agent.

"2. Where, in the trial of the cause, plaintiff makes out a prima facie case, and the only defense thereto depends upon the existence of a relation of principal and agent, and there is no competent evidence tending to prove such relation, it is error for the trial court to refuse to instruct the jury to return a verdict for plaintiff when properly requested so to do.

"3. Payment of a negotiable, promissory note, or a part thereof before maturity to one other than the holder thereof, or his duly authorized agent to receive the same, is at the risk of the payer.

"4. Where a negotiable, promissory note

has been assigned, the holder of such note is not required to notify the maker that said note has been assigned."

See, also, Chase v. Commerce Trust Co., 101 Okla. 182, 224 Pac. 148.

One of the cases usually cited as a foundation for the decision in cases of mortgage foreclosure is the International Life Ins. Co. v. Bradley, 114 Okla. 231, 246 Pac. 222. That case, however, is not an authority under the proof in this case.

Under the proof in this case, shortly after the note was made the maker of the note, with full knowledge that the plaintiff below held the note, and long before its maturity, conceived the idea that to take care of the stock was too burdensome. He joined in with E. B. Brink and advertised the stock for sale, the First National Bank of Buffalo being advertised as clerk. This was at a time when the holder of the note had it at Wichita and knew nothing about the transaction, and never discovered anything about it until after Brink had done those things which put him in the federal penitentiary.

Under the evidence in this case, had Brink and the defendant Shane been prosecuted under the state law for disposing of mortgaged property without the consent of the mortgagee, they could scarcely have escaped conviction.

The case of the International Life Ins. Co. v. Bradley, referred to above, arose out of the failure of the Aurelius-Swanson Company, and there are some cases arising out of the Conservative Loan Company failure. In the International Case the transactions ran for several years and the payments had been made and allowed to be left with the loan company, and some were left once after the life insurance company knew of it, and under these circumstances the jury found the Aurelius-Swanson Company were the agents of the holder of the paper for collection.

In the present case, however, as between the defendant Shane and the plaintiff bank, the matter relied on was a single transaction wherein, after making the promissory note, securing it by chattel mortgage, in about a month and about five months before the paper was actually due, and while the paper was held by the plaintiff in another state, and without its knowledge and consent, Shane joined in with another party and sold the mortgaged property, and they kept the money and used it for their own purposes. Plaintiff's position in this case is that of an ordinary bank rediscounting paper of another bank and taking the indorsement of the transferring bank.

This court in the case of Brown v. Howard, 139 Okla. 202, 281 Pac. 792, had before it a much stronger case than the one at bar, and it held that there was no proof of agency. This arose out of the actions of the Conservative Loan Company.

Under these conditions, we do not think that there was sufficient evidence to sustain the verdict of the jury finding the issues against the plaintiff and in favor of the defendant Shane.

The plaintiff below demurred to the evidence of the defendant Shane, and at the conclusion of the entire evidence asked for an instructed verdict. This the court refused, followed by exceptions and a motion for a new trial on account of errors of law occurring at the trial, and on account of the evidence not being sufficient to sustain the verdict.

It is very evident from the record in this case that on another trial there would not be any more evidence than was introduced to show payment in this case to have been made to any person authorized to receive it.

The cause is therefore reversed and remanded to the district court of Harper county, Okla., with instructions to set aside the verdict of the jury, and to enter judgment for the amount of the note and interest in favor of the plaintiff, and against the defendant Shane, together with the amount of taxable cost incurred in bringing this appeal, and the clerk of this court is ordered to certify said amount to the court below in the mandate.

LESTER, C. J., CLARK, V. C. J., and ANDREWS and McNEILL, JJ., concur.

RILEY, HEFNER, and CULLISON, JJ., absent.

SWINDALL, J., not participating.